**Jay Hans VEST, Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, et al., Defendants-Appellees.**

**No. 83–1057.**

United States Court of Appeals, Tenth Circuit.

March 22, 1984.

---

James W. Gusea of Vines, Rideout & Gusea, P.C., Cheyenne, Wyo., for plaintiff-appellant.

Richard A. Stacy, U.S. Atty., D. Wyo., Francis Leland Pico, Asst. U.S. Atty., and John Scorsine, Legal Intern, of Cheyenne, Wyo., for defendants-appellees.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

The plaintiff, Jay Hans Vest (Vest), appeals from an order of the district court dismissing with prejudice his action against the defendant-appellees (appellees) on the basis that, as a federal employee subject to Civil Service, he may not bring a direct constitutional cause of action against his supervisors, the appellees, because of a personnel decision they had made. Vest brought this action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging, *inter alia,* that the appellees conspired to improperly discharge him in retaliation for his public comments regarding improprieties within the Rock Springs, Wyoming, District Office of the Bureau of Land Management (BLM). Because a *Bivens* action may not be maintained by a federal employee against his supervisors concerning personnel actions, we hold that the district court properly dismissed this action.

Vest, initially employed with the BLM in October of 1974, was assigned to the Rock Springs BLM Office in April of 1979. Vest alleges that shortly after November of 1979, he was subjected to harassment by his BLM supervisors. Such harassment, allegedly intended to force Vest from his position with the BLM, consisted of appellee Donald H. Sweep improperly relieving Vest of certain duties (preparation of wilderness intensive inventory reports) and Sweep's refusal to release for public review certain wilderness inventory reports submitted by Vest. Shortly thereafter, Vest informed the local press of his belief that the actions taken by Sweep were improper under BLM directives. Subsequently, Vest's comments were published through several newspaper articles which were circulated throughout the State of Wyoming.

Approximately eight days after Vest spoke with the press, the BLM notified him of a proposal it had made that he be suspended for fourteen days based upon certain incidents unrelated to his public criticisms of the office. Vest's appeal of the suspension was denied; the suspension became effective on March 3, 1980. On or about July 11, 1980, Vest was notified of a proposal to remove him from his BLM position. The BLM's reasons for removal were (1) failure to meet deadlines, (2) failure to produce acceptable work products, (3) failure to follow supervisor's orders, and (4) failure to follow safety rules. Vest contends the actual reason for his removal was the adverse comments he made to the press. On or about September 5, 1980, Vest was removed from his position with the BLM. Vest appealed this decision to the Merit Systems Protection Board (Board) and that Board's Office of Special Counsel. The Office of Special Counsel reviewed the situation and found no grounds warranting its intervention. On January 23, 1981, after a hearing had been held, the hearing examiner for the Board rendered an initial decision upholding Vest's removal.

Although the Board's decision informed Vest of his right to an administrative appeal of the ruling, he chose to forego that review. Thus, pursuant to the regulations of the Board, the initial decision became final. 5 C.F.R. § 1201.113 (1983). Vest then elected not to pursue the available judicial review procedures. *See* 5 U.S.C. § 7703 (1982). Vest subsequently filed the present action in federal district court.

Subsequent to the district court's decision in the instant case, the Supreme Court addressed the very issue decided by the district court and before us on appeal. *See Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (U.S.1983). We hold that the *Bush* decision is dispositive of the question before us. The facts of *Bush* are substantially similar to the present action in that the plaintiff alleged his discharge was in retaliation for exercising his right to free speech. Further, the question before the Court was whether the plaintiff-employee could bring a direct judicial action under *Bivens,* or whether, to recover for any injury he sustained, he must follow the government's comprehensive scheme of review regarding personnel actions.[1] The Court held that "[b]ecause such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." 103 S.Ct. at 2405.

In reaching this decision, the Supreme Court reiterated its previous holding that a *Bivens* action could not be maintained if either one of two situations was present: 1) there exist "special factors counselling hesitation" of a court to create such an action;

and 2) there exists an "explicit congressional declaration" foreclosing the money damages claim and requiring the action to be "remitted to another remedy." *Carlson v. Green,* 446 U.S. 14, 18–19 and n. 5, 100 S.Ct. 1468, 1471–1472 n. 5, 64 L.Ed.2d 15 (1980); *Bivens, supra* 403 U.S. at 396–97, 91 S.Ct. at 2004–05. Although the *Bush* Court held that there was no congressional directive expressly denying Bush the judicial remedy he sought, there did exist "special factors counselling hesitation." These special factors include the unique status of government employment and the existence of an elaborate, comprehensive statutory scheme which provides meaningful remedies for civil servants unfairly disciplined for making critical comments about their agencies. 103 S.Ct. at 2411, 4758. *See also* 5 U.S.C. §§ 7501–7543, 7701–7703 (1982).[2] The *Bush* Court concluded that Congress had paid "careful attention to conflicting policy considerations" when it enacted this review scheme; hence, Congress was in a better position than a court to decide if the public interest would best be served by creating a new species of litigation in the federal employment sector. 103 S.Ct. at 2417–2418.

The nature of Vest's claim and his federal employment demand that this case be controlled by *Bush.* Under the *Bush* mandate, Vest, a civil servant, must rely exclusively on the remedies available to him under the comprehensive statutory scheme devised by Congress. This scheme includes a direct judicial appeal from the Board's final decision to the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703 (1982). We hold that the district court properly dismissed Vest's action because the presence of such a com-

---

**1.** The primary difference between this case and *Bush* is that Vest failed to pursue the administrative remedies available to him under 5 U.S.C. §§ 7501–7543, 7701–7703 (1982). In *Bush,* however, the plaintiff's administrative appeal was in process at the time he filed the *Bivens* action. We must note, however, that in the present action we are not concerned with the question of whether Vest properly "exhausted his administrative remedies" and, thus, whether we have before us a *final* administrative action ripe for

judicial review. Our holding, as did the *Bush* Court's holding, merely deals with the availability of a *Bivens* action under the circumstances before us.

**2.** See generally *Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (U.S.1983) for a detailed discussion of this statutory scheme and its history.

 

prehensive statutory scheme to review certain federal personnel actions precludes a direct *Bivens* suit by a federal employee against his federal supervisors.[3]

WE AFFIRM.

---

**3.** Justice Marshall, in a concurring opinion in *Bush* in which he was joined by Justice Blackmun, noted that a federal employee may still pursue a *Bivens* remedy if his injury is not attributable to "personnel actions" covered by the federal scheme in question. *Id.* at 2418 (Marshall, J., concurring).