846 F.2d 613
 John J. WILDER, Plaintiff-Appellant,
v.
Ruth T. PROKOP, Chairwoman of Merit Systems Protection Board
of the United States of America; The Merit Systems
Protection Board of the United States of America; Samuel R.
Pierce, Jr., Secretary of the U.S. Department of Housing and
Urban Development; Gerald J. Hannon, Deputy Regional
Administrator and Acting Regional Administrator of the U.S.
Department of Housing and Urban Development, individually,
Defendants-Appellees.
 No. 84-2540.
 United States Court of Appeals,
Tenth Circuit.
 May 10, 1988.
 
 James L. Treece, Treece & Bahr, Littleton, Colo., for plaintiff-appellant.
 Nancy E. Rice, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., was also on the brief), for defendants-appellees.
 Before HOLLOWAY, Chief Judge, TACHA, Circuit Judge, and BROWN, District Judge*.
 HOLLOWAY, Chief Judge.
 
 
 1
 The plaintiff-appellant, John J. Wilder, appeals from the district court's memorandum order and opinion which granted the defendants-appellees' motion for summary judgment, denied the plaintiff's motion for summary judgment, and dismissed with prejudice the complaint. The named appellees are Ruth T. Prokop, Chairwoman of the Merit Systems Protection Board of the United States; the Merit Systems Protection Board (MSPB); the United States Department of Housing and Urban Development (HUD) and Samuel R. Pierce, in his official capacity as the Secretary of HUD (collectively the "Government"). The appellant ("Wilder") filed a timely appeal. We affirm.
 
 I.
 A. The Factual Background
 
 2
 In 1978, Wilder was employed by the Denver Branch of HUD. On April 7, 1978 he received notice of a Reduction-in-Force (RIF) caused by a reorganization announced by the Secretary. The plaintiff's position was abolished and Wilder was offered reassignment to a position at his GS-15 grade in Washington, D.C. II R.91-93. Wilder refused the assignment offered and also refused to "consider" a voluntary downgrade which would allow HUD to determine if Wilder could be assigned to lower grade positions in the Denver area. Id. at 89. Subsequently Wilder was separated from employment with HUD as the declination of the reassignment offer was final and the employing department was under no obligation to make another offer of placement.
 
 
 3
 The RIF notice stated that "You may appeal this action to the Civil Service Commission if you believe your rights have not been protected or that the instructions governing reduction-in force in FPM Chapter 351 have been incorrectly applied." Id. at 92, p 9. Wilder was informed that such appeal should be filed not later than 15 calendar days after the effective date of the RIF action, June 17, 1978. Wilder did not file an appeal, as described in the RIF notice, with the Civil Service Commission. This commission was replaced as the body to adjudicate appeals with the Merit Systems Protection Board (MSPB), pursuant to the Civil Service Reform Act of 1978. In this opinion we refer to this appeals body by its new form and name, the MSPB (or the "Board").
 
 
 4
 After his separation, Wilder obtained information which led him to believe that his removal from his position was the result of unlawful discrimination based on his political affiliation. On such information, Wilder filed an appeal with the MSPB on March 20, 1980. On July 8, the MSPB dismissed his appeal. Id. at 36-37. The MSPB Chief Appeals Officer found that "appellant did not submit an appeal within the 15-day limit, nor was he prevented by circumstances beyond his control from filing a timely appeal. Therefore, it is concluded that the appeal is not within the jurisdiction of the Merit Systems Protection Board." Id. at 37. The plaintiff then filed this complaint in the district court.
 
 B. Procedural History
 
 5
 This case has a confused and protracted history. The original complaint was filed in 1980 and thereafter there occurred a period of inactivity on the part of the parties. Upon reactivation of the case, by the apparent agreement of the parties, the district court proceeded with Wilder's second amended complaint.
 
 
 6
 Wilder's complaint asserted three claims for relief. First, he charged that the MSPB acted erroneously, arbitrarily, and capriciously in refusing to hear his appeal and asked that the district court provide mandamus relief ordering the MSPB to hear his appeal on the merits. Second, Wilder asserted that HUD violated his constitutional and statutory rights in removing him from his position. Finally, he charged an individual HUD employee also violated Wilder's rights guaranteed under the federal constitution and laws. The district court dismissed the third claim after a hearing, and it is not an issue in this appeal.
 
 
 7
 In accordance with the district court's order, the parties filed cross-motions for summary judgment. At the conclusion of a hearing on the motions, the district court granted the Government's motion for summary judgment as to all claims; denied Wilder's motion; and ordered that the complaint be dismissed with prejudice. I R. 34. As to the first claim, the court said that there was no basis for finding that the decision of the MSPB was arbitrary and capricious in rejecting Wilder's appeal as untimely. IV R. 65-67. The court further rejected the second claim, pointing out that there was no judicial remedy in view of the comprehensive scheme created by Congress protecting federal employees and citing Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Id. at 64.
 
 
 8
 Because of complaints by Wilder that the second claim had not been briefed and argued, Wilder was given ten days to file a motion to reconsider and a brief. This motion was subsequently denied. Id. at 44. Wilder then took this appeal.
 
 
 9
 Wilder contends that the district court erred in dismissing the plaintiff's entire complaint on the defendants' motion for summary judgment; in dismissing plaintiff's complaint on the ground that the district court did not have jurisdiction to order mandamus relief; and in refusing to hear the merits of the plaintiff's second claim for relief, since HUD violated rights provided under the federal constitution and laws. The Government argues that the decision was proper with regard to all of plaintiff's claims.
 
 
 10
 We first consider the district court's jurisdiction and then discuss the other issues in turn.
 
 II.
 A. Jurisdiction
 
 11
 The district court was concerned whether it could exercise jurisdiction over an appeal from an MSPB decision since the Civil Service Reform Act of 1978 (Reform Act) reserved such appeals for the Court of Claims or a United States Court of Appeals. 5 U.S.C. p 7703(b)(1).[1] The Reform Act was further amended in 1982 to reserve jurisdiction only to the United States Court of Appeals for the Federal Circuit. The district court held that it lacked jurisdiction in this action and, in case it could exercise jurisdiction, found on the merits that the Government should be granted summary judgment. See IV R. 38-44, 68-69. In the September 1984 hearing, the Government again argued that the district court lacked jurisdiction. Id. at 40-41.
 
 
 12
 Our review of the Act leads us to conclude that the district court had jurisdiction. The exclusive jurisdiction mandated by the Act, codified at 5 U.S.C. Sec. 7703(b)(1), became effective on January 11, 1979. The effect of this provision was considered by this court in Phillips v. Merit Systems Protection Board, 620 F.2d 217 (10th Cir.1980). In Phillips/MSPB, we held that the savings clause in the Reform Act made it inapplicable to cases instituted or administrative proceedings pending at the time of the effective date. Id. at 219; Pub.L. No. 95-454, Sec. 902(b), 92 Stat. 1111, 1224 (1978). According to the regulation promulgated to implement the clause, "An agency proceeding is considered to exist once the employee has received notice of the proposed action " (emphasis supplied). Phillips/MSPB, 620 F.2d at 219 (quoting 5 C.F.R. Sec. 120.191(b) (1979)). Wilder received notice of the HUD action--the RIF which would abolish his position--on April 7, 1978. Consequently, Wilder's case is subject to appeal and review under prior law, as we held in Phillips/MSPB.
 
 
 13
 Under prior law, jurisdiction lies with the appropriate district court or the Court of claims. Bush v. Lucas, 462 U.S. at 387 & n. 35, 103 S.Ct. at 2416 & n. 35; Phillips/MSPB, 620 F.2d at 219. The district court is an appropriate forum with jurisdiction where the agency action being challenged by the employee occurred prior to effective date of the Reform Act. Denton v. Merit Systems Protection Board, 768 F.2d 422, 424 (D.C.Cir.1985); Department of the Air Force v. Federal Labor Relations Authority, 775 F.2d 727, 733-34 (6th Cir.1985); Ellis v. Merit Systems Protection Board, 613 F.2d 49, 50 (3rd Cir.1980); Beals v. Merit Systems Protection Board, 636 F.2d 169, 171 (7th Cir.1980); Motley v. Secretary of the United States Army, 608 F.2d 122, 123 (5th Cir.1979); Kyle v. Interstate Commerce Commission, 609 F.2d 540, 542 n. 2 (D.C.Cir.1979); In re Christian, 606 F.2d 822, 823 (8th Cir.1979); see also S.Rep. No. 95-969, 95th Cong., 2d Sess. 63, reprinted in 1978 U.S.Code Cong. & Admin.News, 2723, 2785 (legislative history for Reform Act states merit employee cases currently lie in federal district courts).
 
 
 14
 The Supreme Court has clearly determined that subject-matter jurisdiction in these circumstances arises from 28 U.S.C. 1331 rather than from the APA which determines the scope of the review. The amendment of Sec. 1331(a) in 1976 removed the requirement of a specified amount in controversy and carried forward the jurisdictional grant as to "any action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). Section 1331, "subject only to preclusion-of-review statutes created or retained by Congress, ... confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." Id.; Chrysler Corporation v. Brown, 441 U.S. 281, 317 n. 47, 99 S.Ct. 1705, 1725, n. 47 (1979); Andrus v. Charlestone Stone Products Co., Inc., 436 U.S. 604, 607-608 n. 6, 98 S.Ct. 2002, 2005, n. 6 (1978) Hadley Memorial Hospital, Inc. v. Schweiker, 689 F.2d 905, 911 (10th Cir.1982); Merrion v. Jicarilla Apache Tribe, 617 F.2d 537, 540 (10th Cir.1980), aff'd, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982); Fry Brothers Corporation v. Department of Housing and Urban Development, 614 F.2d 732, 733 (10th Cir.1980); see also Robbins v. Reagan, 780 F.2d 37, 42, 43 (D.C.Cir.1985) (district court power exists under 28 U.S.C. Sec. 1331 to review any agency action under the APA, absent a preclusion-of-review statute; quoting 4 K. Davis, Administrative Law Treatise Sec. 23:3 at 128-129 (2d ed 1983).[2] The Government has not argued that the district court lacked jurisdiction because of a preclusion-of-review statute.
 
 
 15
 The district court could and did properly exercise jurisdiction in this instance to review the MSPB action. Before discussing the merits of the court's ruling, we turn to its scope of review and the claim that mandamus relief should have been granted.
 
 B. Scope of Review and Mandamus Relief
 
 16
 The MSPB has broad discretion as to whether it will waive the regulatory time limits for filing appeals. Under the statutory language, an employee may submit an appeal to the MSPB "from any action which is appealable to the Board under any law, rule, or regulation" and it "shall be processed in accordance with regulations prescribed by the Board." 5 U.S.C. Sec. 7701(a). The regulatory process implemented by the MSPB retains the discretionary authority and creates no entitlement to an appeal if the petitioner files after the prescribed time period. An appellant filing an untimely appeal in 1980 would be seeking a waiver of the MSPB rules. As stated in 5 C.F.R. Sec. 1201.12 (1980), in effect when Wilder filed:
 
 
 17
 Revocation, amendment or waiver of rules. The Board may revoke, amend or waive any of these regulations as they apply generally to all cases in accordance with the applicable procedures of the Administrative Procedure Act. A presiding official may waive a Board regulation in an individual case for good cause shown if application of the regulation is not required by statute.
 
 
 18
 When Wilder received notice of the RIF, he was subject to a fifteen day limitation for filing an appeal. It is undisputed that he filed beyond the prescribed period. His motion for a waiver of the time limit was therefore subject to Sec. 1201.12 and dependent upon his persuading the MSPB, through evidence and argument, to use its discretionary authority to grant a waiver.[3]
 
 
 19
 In view of the discretionary authority underlying the MSPB's decision to dismiss Wilder's appeal, the scope of review is determined by the APA, specifically 5 U.S.C. Sec. 706, which applies to the use of discretionary authority by an agency. The MSPB allowed Wilder to file an appeal out to time for the purpose of determining if good cause could be demonstrated to grant a waiver of the regulatory time limits. It is the discretionary power, provided by the statutes and enforced through the regulations, which authorized the MSPB's initial decision to allow Wilder to file for a limited purpose.
 
 
 20
 Court review under 5 U.S.C. Sec. 706(2)(A) is narrow, and we may set aside the MSPB's decision here only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[4] The Board's decision is given a presumption of validity that the law presently grants to any administrative adjudication. Hurley v. United States, 575 F.2d 792, 793 (10th Cir.1978); see also Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (citations omitted); Giesler v. Merit Systems Protection Board, 686 F.2d 844, 847-48 (10th Cir.1982).
 
 
 21
 Our review focuses on whether the MSPB acted within the scope of its authority; followed the necessary procedural requirements; and made a decision that was not arbitrary, capricious, an abuse of discretion, in which the relevant factors were considered and there was no clear error of judgment. Overton Park, 401 U.S. at 415-417, 91 S.Ct. at 823-824. In view of the statutory language in 5 U.S.C. Sec. 7701(a), and the provisions of 5 C.F.R. Sec. 1201.12, supra, the MSPB was acting within the scope of the authority provided by Congress.
 
 
 22
 Here we review the MSPB's interpretation of its own rules and regulations regarding the waiver of time limits for filing appeals of agency decisions, and its decision under them. Where the MSPB acted within the scope of its authority, this interpretation of the MSPB's rules and regulations must be sustained and applied as controlling law unless that interpretation is plainly erroneous or inconsistent with the regulations. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); accord INS v. Stanisic, 395 U.S. 62, 72, 89 S.Ct. 1519, 1525-1526, 23 L.Ed.2d 101 (1969); Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Hurley, 575 F.2d at 793; Giesler, 686 F.2d at 847-848. The court may not substitute its judgment for that of the MSPB and we can only insure that the federal law and required procedures have been followed and that the Board's action is not arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. Overton Park, 401 U.S. at 416, 91 S.Ct. at 823; Hurley, 575 F.2d at 793; Giesler, 686 F.2d at 848. Under the arbitrary and capricious standard the MSPB's decision needs only to have a rational basis in law. Hurley, 575 F.2d at 794; Giesler, 686 at 848.
 
 
 23
 The MSPB decision is a final decision, subject to review by the district and the appellate court. Wilder argued in the district court that it was not a final decision, but "a refusal to hear," a denial of the usual administrative procedures which would render a final decision. This is not persuasive reasoning.[5] See IV R. 42, 53-56. As the district court noted, the MSPB decision states "The appeal is dismissed. This decision is final. There is no further right to appeal. This means that the decision marks the exhaustion of those administrative remedies which must precede resort to the courts." II R. at 37. The court properly found that the MSPB made a final decision, subject to its review.
 
 
 24
 If the district court finds that an MSPB action to deny a waiver of the time limit is arbitrary and capricious, it should then remand the case to the MSPB. A remand rather than a court consideration of the merits of appellant's case is the general procedure, absent special circumstances or questions of law which are determinative of the appellant's claims. Shubinsky v. United States, 488 F.2d 1003, 1007, 203 Ct.Cl. 199 (1973) (remand to the appeals board is "most expeditious and appropriate"); accord Casey v. Merit Systems Protection Board, 748 F.2d 685, 687 (Fed.Cir.1984); Strickland v. Merit Systems Protection Board, 748 F.2d 681, 684 (Fed.Cir.1984).
 
 
 25
 Assuming that Wilder prevailed on his claim that the MSPB's action was arbitrary and capricious, the relief ordered by the court would not include granting a writ of a mandamus pursuant to 28 U.S.C. Sec. 1361 or Sec. 1651.[6] "It is not disputed that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Allied Chemical Corporation v. Daiflon, Inc., 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1981) (citing Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967)); Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382-385, 74 S.Ct. 145, 147-149, 98 L.Ed. 106 (1953); Ex parte Fahey, 332 U.S. 258, 259, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947)). To grant mandamus relief, the court must find: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and preemptory duty on the part of the defendant to do the action in question; and (3) no other adequate remedy is available. Hadley Memorial, 689 F. 905, 912 (10th Cir.1982) (citing Cervoni v. Secretary of Health, Education and Welfare, 581 F.2d 1010, 1019 (1st Cir.1978) and Allied Chemical, supra ).
 
 
 26
 Wilder's circumstances are not "extraordinary" within the meaning of the requirements for mandamus relief. Given the discretionary authority of the MSPB with regard to the waiver of time limitations, Wilder cannot demonstrate that he has a clear right to the relief sought and that the MSPB must in any event waive the timeliness requirement and provide a hearing on the merits of his claims. Neither can Wilder show a plainly defined and preemptory duty on the part of the MSPB to act and provide the relief sought. Finally, given the comprehensive scheme which Congress has created to protect civil service workers, which is implemented through statutes and regulations, Wilder cannot demonstrate that there is no other adequate remedy available. As discussed in Bush, 462 U.S. at 380-388, 103 S.Ct. at 2412-2417, and in Part IV, infra, there is no absence of an affirmative action by Congress nor of substantive and procedural law. Id. at 377, 103 S.Ct. at 2411.
 
 
 27
 Cases on which Wilder bases his argument that he was entitled to mandamus relief, commanding MSPB to hear the merits of his allegations, do not support his position. Brief of the Appellant at 8-10. He relies on Bendure v. United States, 554 F.2d 427, 213 Ct.Cl. 633 (1977), superseded by statute as stated in Harris v. United States, 841 F.2d 1097 (Fed.Cir.1988). In Bendure, the plaintiffs were sent a letter by the Commission stating that there was no right of appeal to the Commission with regard to such decisions and they apparently felt that they had exhausted their administrative remedies. There was also argument by the government concerning a collective bargaining procedure to a special impasse panel. However, with respect to both the appeal and the collective bargaining procedure, the court concluded that the asserted remedies were not meaningful. Thus in Bendure the exhaustion doctrine was inapplicable because of futility, the administrative remedies being inadequate. Bendure, 554 F.2d at 431, 434. Here, Wilder did not face an inadequacy of remedy if he had timely pursued his appeal to the Board, and thus Bendure is distinguishable, and not supportive of Wilder's argument.
 
 
 28
 Appellant also relies on Shubinsky v. United States, 488 F.2d 1003 (Ct.Cl.1973). There the appellant was told that the termination of his job was due to a liquidation, rather than the true cause, a reorganization. Id. at 1004, 1005. Because the appellant was told his veteran's preference-eligibility retention rights did not extend and apply in a liquidation, he did not appeal his termination, though such retention rights would be honored in a reorganization. Id. at 1005. The court found "unusual circumstances" existed because the agency "misrepresented the factors material to plaintiff's preference eligible rights;" it was incumbent on the agency to rectify the misrepresentation but it did not do so; and the agency continued to misrepresent the nature of the personnel action. Id. at 1006. Hence the court held that the failure to exhaust the administrative remedy was not fatal to Shubinsky's suit and the court determined that the most expeditious and appropriate disposition was a remand to the Civil Service Commission (predecessor to MSPB) to adjudicate Shubinsky's retention rights. Id. at 1007.
 
 
 29
 The rationale of the case does appear to lend support to Wilder's theory for avoiding the 15-day time bar, although his factual showing does not amount to an adequate case under that theory. Wilder does argue that he was similarly unable to file within the time limit "because he did not become aware of the alleged agency wrongdoing [unlawful reorganization for political reasons] until two years after this removal." Brief of the Appellant at 6-7. Nevertheless, Wilder's assertions, while similar to those of Shubinsky, do not amount to a sufficient showing of good cause for not complying with the 15-day limitation. For reasons explained below, this articulation and presentation of facts did not so reasonably explain his failure to file a timely appeal that the MSPB's decision was arbitrary or capricious. While Shubinsky's showing was based on undisputed and established facts, Wilder's showing was not of this sort and in any event did not justify mandamus relief.
 
 
 30
 In sum, we hold that the district court's scope of review, and that of this court on appeal, is to determine whether the MSPB's action was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. Further, we hold that the circumstances here did not entitle Wilder to mandamus relief.
 
 III.
 The MSPB Dismissal of Wilder's Appeal
 
 31
 The central issue here is whether the MSPB's dismissal of Wilder's appeal was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. The presiding officer concluded that Wilder failed to show good cause for the MSPB to accept his appeal for adjudication. The Board's refusal to entertain an untimely appeal and consequent dismissal of a petition does not in and of itself necessarily constitute an abuse of the MSPB's discretionary power. Piccone v. United States, 407 F.2d 866, 869, 186 Ct.Cl. 752 (1969). Here, after consideration of the MSPB adjudication related to the issue of good cause and the MSPB's discretionary authority, in light of Wilder's showing, we are persuaded that the MSPB's dismissal was not arbitrary or capricious, an abuse of discretion, or not in accord with law.
 
 
 32
 To establish good cause, the appellant need not show that it was impossible to file a timely appeal, and instead may show that the delay was excusable under the circumstances where diligence or ordinary prudence was exercised. Phillips v. United States Postal Service, 695 F.2d 1389, 1391 (Fed.Cir.1982) (citing Alonzo v. Department of the Air Force, 4 MSPB 262, 4 M.S.P.R. 180 (1980)). Though decided after Wilder's decision was made by the presiding MSPB officer, Alonzo articulates how the MSPB views the exercise of its discretionary authority. "The particular circumstances of each case must govern the determination of the presiding [MSPB] official." Alonzo, 4 M.S.P.R. at 183. A time limit for filing appeals provides a system that expedites the administrative resolution of employee appeals and ensures basic fairness. Id. While there is a need for finality in personnel actions, a waiver is warranted if the employee gives a reasonable excuse for the delay, absent a showing of substantial prejudice to the agency caused by the delay. Id. at 183, 184. Within this system, " 'good cause' is an elastic concept." Id. at 183 (citing Dinko v. Wall, 531 F.2d 68, 75 (2nd Cir.1976)).
 
 
 33
 "The presiding [MSPB] official must exercise his judgment in determining whether there has been an articulation or presentation of facts reasonably excusing the failure to file a timely appeal." Alonzo, 4 M.S.P.R. at 183 (emphasis added). The determination whether to waive the time limit implicates several factors, including but not limited to the following: the length of the delay; whether the appellant was notified of the time limit or was otherwise aware of it; the existence of circumstances beyond the control of the appellant which affected his ability to comply with the time limits; the degree to which negligence by the appellant has been shown to be present or absent; circumstances which show that any neglect involved is excusable neglect; a showing of unavoidable casualty or misfortune; and the extent and nature of the prejudice to the agency which would result from waiver of the time limit. Id. at 183, 184.
 
 
 34
 Alonzo involved three appellants whose cases were consolidated; the MSPB's findings reveal how the applicable factors must be shown by a successful appellant. A demonstration of circumstances beyond the control of the appellant is necessary for a good cause waiver. The presiding officer in Alonzo found that good cause was not shown so as to justify a waiver of the time limitation and dismissed as untimely filed the appeals of all three appellants. Before the MSPB, one prevailing appellant documented that he was misled by his supervisor as to who could represent him in an appeal and the correction of the confusion resulted in an application being filed four days late. Id. at 184-185. The other Alonzo appellant who succeeded produced evidence that post office processing caused his appeal to be filed one day past the deadline. Id. at 185. The third Alonzo appellant filed three months past the deadline and failed to provide sufficient evidence which would overcome the undisputed evidence about his nondisabled capacity during the period prior to the deadline. Id. The MSPB found that the presiding official had abused his discretion with regard to the first two appellants as they made a sufficient showing of circumstances beyond their control so as to constitute a reasonable excuse or good cause. The MSPB balanced the equities involved, weighing the difficulties of the agency against the benefit to the appellants. The Board found that these two appellants had excusable delays in the light of the brevity of the delay in filing and the extenuating circumstances. Id. at 186.
 
 
 35
 When Wilder filed his appeal with the MSPB, because it was filed more than 15 days after the effective date of the RIF, "the appellant was requested to show cause why his appeal should be accepted for adjudication." II R. 36. Under the terms of 5 C.F.R. Sec. 1201.12, the appellant's motion to the MSPB must show good cause for the untimely filing. It is undisputed that Wilder sought the MSPB's discretionary waiver some twenty-three months after the deadline for appeal.
 
 
 36
 Here, Wilder's argument was that he had information and a belief that he was wrongfully removed from his last two positions with HUD as a result of an illegal reorganization based on political discrimination. II R. 10-12. He said that the agency misled him and withheld information so as to prevent him from discovering and obtaining documentation of the allegedly political motive for the HUD action. Id. These arguments were offered as the reason and circumstance beyond his control which prevented Wilder from making a timely filing.
 
 
 37
 The record includes, inter alia, the official notices which Wilder received informing him of the RIF and his employment alternatives, correspondence between Wilder and the MSPB with regard to his appeal, and Wilder's initial and supplementary affidavits. Offered as evidence for Wilder's arguments were his affidavits which admit that it was "rumor" on which he formed his belief about the political motive for the termination of his employment. Id. at 6-7, 29-30. Perhaps Wilder's strongest point was his statement in his supplemental affidavit that he had questioned a December 31, 1977 listing of his former position as a current position and was told by HUD personnel that the listing was in error and the job was abolished in fact; and that this misrepresentation amounted to fraudulent concealment, tolling the running of the limitation for his appeal. Id. at 29-30.
 
 
 38
 Letters from HUD officials to Wilder's counsel describe the events leading to the RIF, the dates of the specific actions, and the subsequent effects on the two positions formerly held by Wilder. Id. at 21-23: Letter from Ralph I. Stinson, Regional Personnel Officer, HUD, dated April 7, 1980; Id. at 33: Letter from Virginia M. Armstrong, Director of Personnel, HUD, dated April 30, 1980. According to these HUD officials, the position Wilder held at the time of the RIF action, Special Assistant, and his former position, Assistant Regional Administrator, ceased to exist as a result of the reorganization ordered by the Secretary. Id. at 21-23, also at 91. There were substantive changes in duties, title, and a lowering of the GS classification from GS-15 to GS-14. Id. at 21-23.[7]
 
 
 39
 The MSPB considered Wilder's affidavits and the rebuttal statements from the HUD officials and concluded that Wilder's explanation for an untimely filing did not constitute good cause. While there are factual differences in the events as told by Wilder and the HUD officials, the record is not persuasive that they were material. Pursuant to the statutory requirements of the Reform Act and concomitant regulations, the MSPB found that Wilder had been properly informed of the RIF and his appeal rights. On the sole issue on which Wilder's appeal was before the MSPB--the existence of good cause as to why Wilder did not file a timely appeal--the Board found an absence of persuasive argument and evidence which was directly related. The MSPB Chief Appeals Officer concluded:
 
 
 40
 The record clearly shows that the appellant was advised in the reduction-in-force notice of his appeal rights and the time limits within which he must appeal. In his response to the timeliness issue, the appellant states that his separation was for reasons other than those provided in 5 C.F.R. Sec. 351.201. He also states that he is unable to secure information so that he may know whether the agency has violated other prohibitions of Sec. 351.601 (supra). He argues that he was wrongfully reassigned from his position of GS-340-15 to the position of GS-301-15 one year prior to his reduction-in-force action. Even though the reasons given for the appeal are not uncommon in an appeal of this nature, I find these arguments are not relevant to the issue of why the appellant did not file a timely appeal. Furthermore, I find that the appellant did not submit an appeal within the 15-day time limit, nor was he prevented by circumstances beyond his control from filing a timely appeal. Therefore, it is concluded that the appeal is not within the jurisdiction of the Merit Systems Protection Board.
 
 
 41
 While not an expansive statement, the chief appeals officer's findings and conclusions address the good cause issue and lack of due diligence, as is expected in the MSPB's decision. See Alonzo, 4 M.S.P.R. at 185-86; Casey, 748 F.2d at 687. With respect to the factors listed in Alonzo, Wilder had a lengthy delay in filing his appeal; he was properly notified of the RIF action and his rights as they related to appeal and alternative employment; and he was allowed to offer evidence as to the existence of circumstances beyond his control which affected his ability to comply with the time limits. Moreover, we note that in Wilder's supplemental affidavit he stated that he had "not been in touch with the operations of his former office and that his lack of knowledge and information is directly due to his improper removal." II R. 29. This statement we feel serves to show not an excuse for Wilder's lack of diligence, but that he had not sought to contact other employees and develop the facts.
 
 
 42
 We believe the MSPB could rationally have concluded that the reasons advanced and evidence offered, primarily Wilder's affidavits, were insufficient to constitute a reasonable explanation or good cause. The case law on employee appeals, including cases cited by Wilder, demonstrates that "something more" than such allegations is required to establish good cause. Sheeran v. Merit Systems Protection Board, 746 F.2d 806, 807 (Fed.Cir.1984); Western Medical Enterprises, Inc. v. Heckler, 783 F.2d 1376, 1381-82 (9th Cir.1986).[8]
 
 
 43
 We cannot say that the MSPB decision was arbitrary or capricious or an abuse of discretion. The decision was in compliance with required procedures and had a rational basis in the law. Hurley, 575 F.2d at 793; Giesler, 686 F.2d at 848. Within the Board's discretionary authority with regard to waivers of time limitations for filing appeals, 5 C.F.R. Sec. 1201.12, the MSPB presiding officer could rationally conclude that Wilder's argument and evidence did not demonstrate good cause. Hence the MSPB dismissal of his complaint, because he failed to show good cause and filed an untimely appeal, was not arbitrary or capricious, or an abuse of discretion. Phillips v. United States Postal Service, 695 F.2d at 1391; Sheeran, 746 F.2d at 807; Western Medical, 783 F.2d at 1381-1382.
 
 IV.
 The Dismissal of Wilder's Second Claim
 
 44
 Wilder also argues that the district court erred in dismissing his entire complaint when the court granted the Government's motion for summary judgment. According to Wilder, the cross-motions for summary judgment were directed only to the first claim--that the MSPB acted arbitrarily and capriciously in denying Wilder a waiver of the time limitation for filing appeals. The Government argues that its motion was directed to all claims and that Wilder failed to appropriately respond.[9] The court held that a decision on the first claim was preclusive of Wilder's claim that his rights under the Constitution and federal laws were violated by the agency and its officials. This latter claim had not been made in Wilder's appeal before the MSPB.
 
 
 45
 The district court stated two grounds for the dismissal of the entire complaint. First, the case would only be remanded to the MSPB if its refusal to hear Wilder's appeal was arbitrary and capricious, III R. 34-35; the court did not so find and instead dismissed the complaint. Second, the judge said that under the doctrine of Bush v. Lucas, since Congress had created a comprehensive administrative scheme to protect civil servants against arbitrary action by supervisors and agencies, the courts should not augment the procedures with an additional judicial remedy like that sought by Wilder's second claim. IV R. 64, 76. Therefore, the second claim, and thus the entire complaint, was dismissed.
 
 A. The Claim of Procedural Error
 
 46
 We focus first on the claim of a procedural error in granting summary judgment against Wilder's second claim. He says the summary judgment motions and the subject of the hearing dealt only with his first claim that MSPB's rejection of his appeal was arbitrary and capricious.
 
 
 47
 The Government concedes that some misunderstanding on Wilder's part was possible as to the court's instructions on submission of motions for summary judgment. Despite any ambiguity as to the scope of the briefs on the cross-motions for summary judgment, the Government argues that disposition of the second claim was harmless error.
 
 
 48
 Under Rule 56, Fed.R.Civ.P., the court can grant summary judgment when it affirmatively appears from the pleadings, depositions and admissions on file, together with the affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment in his favor as a matter of law. Broderick Wood Products Co. v. United States, 195 F.2d 433, 435-36 (10th Cir.1952). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); see also Dosier v. United States, 473 F.2d 866 (5th Cir.1973) (where agency record shows no departure from required standards for due process and there is no issue of material fact with respect to matters within the court's scope of review, summary judgment is appropriate); Dilatush v. Wilson, 239 F.2d 44 (D.C.Cir.1956), cert. denied, 353 U.S. 917, 77 S.Ct. 663, 1 L.Ed.2d 663 (1957) (where agency findings and proceedings meet requirements of applicable law, case was properly decided on motion for summary judgment).
 
 
 49
 While we agree that confusion may have arisen from the district court's instructions on the scope of the summary judgment motions to be filed, this is not dispositive. Even if a ground is not urged by a party, where the requirements of Rule 56 are met, the court is not barred from any consideration of that ground. It can grant summary judgment on grounds other than those raised in the motions before the court if the facts are fully developed showing entitlement of the nonmoving party to judgment as a matter of law, and if the court is satisfied there is no procedural prejudice to the moving party. The purpose of Rule 56 is to permit expeditious disposition of cases in which there is not a substantial issue of fact. Broderick Wood, 195 F.2d at 435-436. If there is no genuine issue as to any material fact upon which the outcome of the litigation depends, the court may enter such a judgment. Id. "[T]he fact that it [judgment] may be granted on a ground other than that specified in the motion therefor does not warrant the disturbing of the judgment on appeal." Id.; Board of National Missions v. Smith, 182 F.2d 362, 364-365 (7th Cir.1950); 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 56.14 at 56-184, 56-185 (2d ed. 1985); cf. Pueblo of Santa Ana v. Mountain States Telephone & Telegraph Co., 734 F.2d 1402, 1408 (10th Cir.1984) (summary judgment may be granted to an opposing party even when he has made no formal cross-motion under Rule 56; quoting 10A C.A. Wright, A.R. Miller & M.K. Kane, Federal Practice and Procedure: Civil 2d Sec. 2720, at 29-30). See also, Dickeson v. Quarberg, 844 F.2d 1435 (10th Cir. 1988).
 
 
 50
 We are convinced that the claim of procedural error should be rejected.
 
 
 51
 B. The Merits of Dismissal of the Second Claim
 
 
 52
 We turn to the merits of Wilder's second claim that HUD had violated his constitutional and statutory rights by removing him from his position.
 
 
 53
 On this issue we feel that the Supreme Court's decision in Bush v. Lucas is dispositive, although Wilder does not assert a Bivens type claim for damages.[10] In Bush, v. Lucas the Court concluded that a federal employee's claim of violation of his constitutional rights involved two factors counseling restraint by the court: the special nature of the government employment relationship and the need to operate government facilities effectively. Bush v. Lucas, 462 U.S. at 379-380, 103 S.Ct. at 2412; Franks v. Nimmo, 796 F.2d 1230, 1238-1239 (10th Cir.1986). The Court reviewed the history of executive and legislative creation of legal remedies to protect federal civil servants. See Bush v. Lucas, 462 U.S. at 380-388, 103 S.Ct. at 2412-2417. Finding that Congress had created "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations," the Court declined to create a new remedy for federal employees. Id. at 388-389, 103 S.Ct. at 2417. "In finding the existing remedy meaningful, the Court emphasized that an employee could present constitutional claims arising from the adverse personnel decision, receive judicial review of the administrative proceedings, and obtain reinstatement and back pay." Franks, 796 F.2d at 1239 (citing Bush v. Lucas, 462 U.S. at 385-386 & n. 29, 103 S.Ct. at 2415 & n. 29).
 
 
 54
 Wilder does not present a persuasive reason why he was not likewise required to pursue his remedies exclusively in the merit system which could hear his claims made in his district court complaint. Wilder had a forum in which to present his constitutional claim;[11] he could have received judicial review of the administrative proceeding and could have obtained meaningful relief. Franks, 796 F.2d at 1240. Accordingly the courts should not afford additional remedies outside of the statutory and regulatory scheme created by Congress to protect civil service employees. Id. at 1238-1239; accord Philippus v. Griffin, 759 F.2d 806 (10th Cir.1985); Shoultz v. Monfort of Colorado, Inc., 754 F.2d 318 (10th Cir.1985), cert. denied, 475 U.S. 1044, 106 S.Ct. 1259, 89 L.Ed.2d 569 (1986); Vest v. United States Department of Interior, 729 F.2d 1284 (10th Cir. 1984).
 
 
 55
 We are persuaded that Wilder's second claim based on the federal Constitution and law was properly dismissed. Wilder could have obtained initial review on the merits of the second claim of a constitutional wrong along with his other claims, if he had timely appealed or persuaded the MSPB with argument and evidence that good cause excused his untimely appeal. His failure to do so does not serve as a basis for disregarding the Bush v. Lucas restrictions on judicial remedies.[12] Thus the dismissal of Wilder's second claim was correct.
 
 V.
 
 56
 Accordingly, the summary judgment in the Government's favor dismissing appellant Wilder's complaint as to all claims is
 
 
 57
 AFFIRMED.
 
 
 
 *
 The Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Section 7703 provides in pertinent part:
 (b)(1) Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals
 * * *
 Paragraph (2) prescribes that cases of discrimination subject to the provisions of the Civil Rights Act of 1964, Age Discrimination in Employment Act of 1967, and the Fair Labor Standards Act shall be filed in accordance with these acts.
 
 
 [2]
 Some cases previously cited point to 28 U.S.C. Sec. 1346 as the apparent source of the district court's jurisdiction. Phillips/MSPB, 620 F.2d at 219; Ellis, 613 F.2d at 50; Motley, 608 F.2d at 123; Kyle, 609 F.2d at 542 n. 2. We feel that Califano v. Sanders and its progeny authoritatively establish the district court's jurisdiction where the plaintiff's complaint arises from an agency action in April 1978, prior to the effective date of the 1978 Reform Act. "Nor does it matter that the complaint does not in so many words assert Sec. 1331(a) as a basis of jurisdiction, since the facts alleged in it are sufficient to establish such jurisdiction and the complaint appeared jurisdictionally correct when filed." Andrus, 436 U.S. at 608 n. 6, 98 S.Ct. at 2005 n. 6 (citations omitted)
 
 
 [3]
 After 1980, the MSPB amended its rules to supplement Sec. 1201.12 with 5 C.F.R. Sec. 1201.22(c) (1987), which states:
 (c) Timeliness of petitions for appeal. (1) Any party who files a petition for appeal outside a time limit set by statute, regulation, or order of a presiding official, must file with the petition a motion for waiver of the time limit. The motion must contain evidence and argument showing good cause for the untimely filing. Such motions may be granted or denied without providing other parties the opportunity of response, in the presiding official's discretion. (emphasis in original).
 
 
 [4]
 Though 5 U.S.C. Sec. 7703 does not determine jurisdiction in this case, the standard of review is the same as provided in 5 U.S.C. Sec. 706(2)(A). Section 7703(c) provides in pertinent part:
 [T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be--
 (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 [5]
 Underlying Wilder's argument about the MSPB issuing a nonfinal decision is the appellant's claim that he was denied the requisite administrative procedures. Wilder sought a writ of mandamus from the district court which would require the MSPB to give Wilder a hearing. We find no basis for a writ of mandamus in this instance
 
 
 [6]
 28 U.S.C. Sec. 1361 provides:
 Action to compel an officer of the United States to perform his duty
 The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.
 28 U.S.C. Sec. 1651(a) provides:
 (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
 
 
 [7]
 According to Stinson, the reorganization effected more than 100 personnel actions in the region, affecting approximately 20 percent of the personnel. II R. 22. Wilder's last position and the subject of the RIF notice, Special Assistant in the Regional Administrator's Office, was reclassified at the GS-14 grade level. Id. Wilder's previous position, Assistant Regional Administrator, was eliminated and not the same as some lesser positions at the GS-14 level in existence after the reorganization. Id. at 23. During the reorganization, two individuals were classified as Special Assistant at the GS-15 level, Wilder and another employee who accepted the reassignment at the GS-15 level which was offered in the RIF notice. Id
 
 
 [8]
 Where appellants present sufficient evidence of circumstances beyond their control, the courts of appeals have reversed district courts or MSPB dismissals of appellants' complaints which concluded that no waiver was warranted because of the absence of argument and facts demonstrating reasonable cause. E.g., Young v. Department of Commerce, Census Bureau, 737 F.2d 1029 (Fed.Cir.1984) (agency provided appellants with out of date form and then refused to provide employees' union with affected appellants' addresses so as to correct mistake); Strickland v. Merit Systems Protection Board, 748 F.2d 681 (Fed.Cir.1984) (MSPB changed case numbers and failed to respond to appellants' request for clarification; error "went to the heart of the petitioner's right to seek review"); Casey v. Merit Systems Protection Board, 748 F.2d 685 (Fed.Cir.1984) (appellant received no notice of adverse action procedures providing a right to notice, written decision, and right to appeal); Covington v. Department of Health and Human Services, 750 F.2d 937 (Fed.Cir.1984) (notice of RIF was inadequate and erroneous thereby denying appellant information on statutory and regulatory rights and required hearing was denied to appellant); Ceja v. United States, 710 F.2d 812 (Fed.Cir.1983) (appellant's belief in threats of retaliation by criminal prosecution for exercise of appeal rights was fostered by government personnel; agency failed to rebut affidavits by appellant, supervisor, and former co-worker as to widespread belief in agency retaliation); Goodrich v. United States Department of Navy, 686 F.2d 169 (3rd Cir.1982), cert. denied, 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985) (agency failed to follow own regulations and deprived appellant of information necessary to pursue administrative remedies); Sonntag v. Dooley, 650 F.2d 904 (7th Cir.1981) (Bivens remedy is viable where plaintiff was not afforded an administrative hearing and regulations afforded no pre- or post-termination hearing or other procedural protection); Bishop v. Tice, 622 F.2d 349 (8th Cir.1980) (complaint should not be dismissed where agency defendants allegedly deprived plaintiff of statutory procedural rights, withheld information on reasons for forced resignation, and continued threats to lodge criminal charges against plaintiff)
 
 
 [9]
 There is confusion as to the scope and responsive nature of the motions. The Government filed its motion for summary judgment on June 11, 1984. The plaintiff styled his motion as one for partial summary judgment as to the first claim. Though the attorney for Wilder claimed that the motion was filed on May 29, 1984, the court records failed to show such a filing and neither the court nor the Government's attorney were aware of or possessed a copy of the motion. IV R. 47-52. Consequently, the motion was entered on the record as being filed on the day of the hearing, September 24, 1984 and included in that proceeding
 
 
 [10]
 Wilder sought as remedies reinstatement with seniority, back wages, benefit costs, interest, and attorney fees
 
 
 [11]
 The MSPB can give relief from a prohibited personnel practice such as discrimination because of political affiliation. 5 U.S.C. Secs. 7701(c)(2)(B) and 2302(b)(1)(E); 5 C.F.R. Sec. 1201.56(b)(2) (1980)
 
 
 [12]
 Under the Bush v. Lucas doctrine, we are convinced there is no direct independent judicial remedy for Wilder. His only judicial review and remedy would arise after the administrative agency had accepted jurisdiction over his appeal, heard the merits, and rendered a final decision. At this juncture he could have judicial review of the administrative proceeding