SINGLETON SHEET METAL
WORKS, INC., Plaintiff,

v.

The CITY OF PUEBLO, A municipal cor-
poration, United States of America, De-
partment of the Army, Army Corps of
Engineers, Defendants.

Civ. A. No. 88–B–1903.

United States District Court,
D. Colorado.

Dec. 20, 1989.

Richard Gram, Pueblo, Colo., for plaintiff.

Jerry Atencio, Asst. U.S. Atty., Denver, Colo., Thomas Jagger, Pueblo, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This matter is before me on defendants' motions to dismiss for lack of jurisdiction. Singleton Sheet Metal Works, Inc. (Singleton) contends that jurisdiction arises under the Administrative Procedure Act, 5 U.S.C. §§ 500–576, 701–703 (Supp.1989) and from the presence of a federal question, 28 U.S.C. § 1331 (Supp.1989). Singleton fails to establish its basis for jurisdiction. Therefore, I grant defendants' motions to dismiss.

In 1987 the City of Pueblo (Pueblo), a Colorado home rule municipality, and the U.S. Army Corps of Engineers (Corps) signed a Local Cooperation Agreement (LCA) to begin the Fountain Creek flood control project (Project). Under the LCA, Pueblo was responsible for furnishing the lands and complying with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601–4655 (1983) (Federal Relocation Assistance Act).

In 1986, Pueblo had notified Singleton Sheet Metal Works (Singleton) that its land was needed for the Project and that Pueblo may compensate Singleton for relocation expenses. After the relocation and as instructed, Singleton submitted claims for reimbursement to Pueblo's Director of Public Works. Some of the claims were approved and others were rejected. On Singleton's administrative appeal to Pueblo's Director of Finance, additional claims were approved and the rejection of others affirmed. Singleton then filed a complaint here seeking damages for inadequate compensation from Pueblo and the Corps, and review of Pueblo's Finance Director's decision.

Singleton has the burden of establishing jurisdiction. *Groundhog v. Keeler*, 442 F.2d 674 (10th Cir.1971). Jurisdiction must appear on the face of Singleton's complaint. *Martinez v. United States Olympic Comm.*, 802 F.2d 1275, 1280 (10th Cir. 1986). Singleton seeks to meet its burden by alleging that jurisdiction is proper under the Administrative Procedure Act, 5 U.S.C.

§§ 500–576, 701–703 (Supp.1989), (APA), and by the presence of a federal question, 28 U.S.C. § 1331 (Supp.1989).

The APA does not confer an independent grant of subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Wilder v. Prokop*, 846 F.2d 613, 618 (10th Cir.1988). However, 5 U.S.C. § 702 provides for judicial review of final federal agency action where there is an independent basis for subject matter jurisdiction. *Colorado Dep't of Social Services v. Dep't of Health and Human Serv.*, 558 F.Supp. 337, 339 (D.Colo. 1983).

■ In this case however, Singleton fails to establish the very presence of *federal* agency action. Singleton contends that Pueblo was acting as an agent for the federal government. Pueblo's Finance Director's decision on review, Singleton argues, was final federal agency action. I disagree.

"Agency," as used in the APA, "means each authority of the Government of the United States...." 5 U.S.C. § 551 (1977). Hence, I look to the substance of the relationship between Pueblo and the federal government to determine if Pueblo acted as an "authority of the Government of the United States." The degree of Corps involvement in the relocation ·process is relevant to that inquiry.

Under the Water Resources Development Act of 1986, 33 U.S.C. §§ 2201–2311 (Supp.1989), Pueblo was required to execute the LCA with the Corps. § 2213(j). In addition, under that act, the LCA was required to contain a provision making Pueblo responsible for acquiring the land necessary for the Project, with costs shared with the federal government. §§ 2213(a) & (i).

The LCA was executed in August of 1987. The terms of the LCA show no intent to convert otherwise non-federal action into federal action. Singleton points to no language in the LCA expressing Pueblo's status as that of an arm of the federal government. Article XII of the LCA states that "[t]he parties to this Agreement act in an independent capacity in the performance of their respective functions under this agreement, and neither party is to be considered the officer, agent, or employee of the other." Furthermore, the Water Resource Development Act, which authorized the Corps to enter into the LCA, consistently identifies entities such as Pueblo as "non-federal." *See Spokane City Legal Serv. v. Legal Serv. Corp.*, 614 F.2d 662, 669 (9th Cir.1980).

■ Under article III(e) of the LCA, Pueblo agreed to comply with the Federal Relocation Assistance Act. That act provides compensation for those whose land is taken for flood control. 42 U.S.C. §§ 4622–4638 (1983). Contrary to Singleton's contention, this federal funding alone does not make Pueblo a federal agency. I agree with the Ninth Circuit that

[f]ederal funding reaches a countless number of activities of local and state governments. To assure that the federal funds are spent for the purposes for which they were intended, extensive federal regulations are promulgated and must be complied with. However, those regulations do not convert acts of local and state governmental bodies into federal governmental acts.

*St. Michael's Convalescent Hosp. v. California*, 643 F.2d 1369, 1373–74 (9th Cir. 1981). Pueblo, as party to the LCA with the Corps, operated as a Colorado municipality, not as a federal entity or agent.

■ There must be "extensive, detailed and virtually day-to-day supervision" by the federal government before "federal agency" status can attach to a non-federal entity. *Forsham v. Harris*, 445 U.S. 169, 180, 100 S.Ct. 977, 984, 63 L.Ed.2d 293 (1980); *United States v. Orleans*, 425 U.S. 807, 815–16, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). Applying that rule to the undisputed facts of this case, I conclude that no federal agency was involved to the degree necessary to establish that Pueblo was acting as a federal agency.

Under the LCA, Pueblo alone was responsible for obtaining the land necessary for the Project. The complaint alleges no Corps involvement in the decision-making process of either Pueblo's Relocation Offi-

cer or its Appeals Officer. Nor does the complaint allege that the Corps reviewed the decisions of the local municipal officers. Consequently, the complaint fails to allege that the Corps engaged in the degree of oversight necessary to conclude that it controlled Pueblo's relocation compensation actions. *See Orleans,* 425 U.S. at 816, 96 S.Ct. at 1976.

Arguably, Singleton's complaint may be read to claim federal question jurisdiction based on the Federal Relocation Assistance Act and by 31 C.F.R. 259 *et seq.* because under the LCA, Pueblo was contractually bound to comply with the Federal Relocation Assistance Act. Further, according to Singleton, Pueblo "was guided by 32 C.F.R. 259 *et seq.*" Here, Pueblo acted pursuant to the relocation provisions of Colo.Rev.Stat. §§ 24–56–101 to 24–56–121, adopted pursuant to 42 U.S.C. § 4630. Pueblo also acted in accordance with its local plan adopted to comply with the provisions of the Colorado relocation statute, the Federal Relocation Assistance Act and regulations promulgated under that act. *See* 51 Fed.Reg. § 7022 *et seq.* (Feb. 27, 1986); 49 C.F.R. pt. 25 (1989). However, merely looking to federal law does not create a federal question. As Justice Holmes said in *Smith v. Kansas City Title Co.,* 255 U.S. 180, 215, 41 S.Ct. 243, 250, 65 L.Ed. 577 (1921) (dissenting):

> The mere adoption by a state law of a United States law as a criterion or test, when the law of the United States has no force *proprio vigore*, does not cause a case under the State law to be also a case under the law of the United States, and so it has been decided by this Court again and again.

*See United Airlines, Inc. v. Division of Indus. Safety,* 633 F.2d 814, 816 (9th Cir. 1980), *cert. denied,* 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 255 (1981).

Moreover, where, as here, an action under the APA requests monetary relief, Singleton faces the additional jurisdictional barrier of the Corps' sovereign immunity. Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action ... *seeking relief other than monetary damages* ... shall not be dismissed ... on the ground that it is against the United States." 5 U.S.C. § 702 (emphasis added). In the absence of a statute waiving the Corps' immunity, this Court has no jurisdiction over it. *New Mexico v. Regan,* 745 F.2d 1318, 1321 & n. 3 (10th Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *see Merrion v. Jicarilla Apache Tribe,* 617 F.2d 537 (10th Cir.1980), *aff'd,* 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). The first claim of Singleton's complaint seeks monetary relief. As to that claim, there is no basis to conclude that the Corps' sovereign immunity has been waived.

This suit is based on action by a subdivision of the state of Colorado taken under Colorado law. There is no final federal agency action to review and no federal question before me. Moreover, as to Singleton's first claim for monetary damages against the Corps, there is no waiver of sovereign immunity. Thus, I find no basis on the face of Singletons' complaint to conclude that this Court has jurisdiction to hear its claims.

ACCORDINGLY, IT IS
ORDERED THAT

defendants' motions to dismiss for lack of jurisdiction are GRANTED.