903 F.2d 784
 The SHOSHONE INDIAN TRIBE and The Arapahoe Indian Tribe, of
the Wind River Indian Reservation, Plaintiffs-Appellees,
v.
Donald P. HODEL, Secretary of the Interior, Department of
the Interior, Defendant-Appellee,
Atlantic Richfield Company, Defendant-Appellant,
and
Chevron Oil Company; Continental Oil Company; Shell Oil
Company, Defendants.
 No. 88-2304.
 United States Court of Appeals,
Tenth Circuit.
 May 17, 1990.
 
 Morris R. Massey of Brown & Drew, Casper, Wyo., for defendant-appellant.
 Robert S. Thompson, III (Sandra Hansen with him, on the brief) of Whiteing, Thompson & White, Boulder, Colorado and Susan M. Williams (Catherine Baker Stetson with her, on the brief) of Gover, Stetson, Williams & West, Albuquerque, N.M., for plaintiffs-appellees.
 Michael J. Malmquist (Roger J. Marzulla, Asst. Atty. Gen., Robert L. Klarquist of the Dept. of Justice and Thornton Withers Field of the Office of the Sol., Dept. of the Interior, Washington, D.C., with him, on the brief), for defendant-appellee.
 
 
 1
 Before HOLLOWAY, Chief Judge, McWILLIAMS, Circuit Judge, and BABCOCK, District Judge.*
 
 
 2
 BABCOCK, District Judge.
 
 
 3
 Atlantic Richfield Company (ARCO) appeals the final partial summary judgment entered in favor of the Secretary of the Interior (Secretary) and the Shoshone and Arapaho Indian Tribes (Tribes). The judgment upheld audit results prepared by the Mineral Management Service (MMS) disallowing certain deductions claimed by ARCO which had reduced ARCO's royalty payments to the Tribes from wet gas (gas which is rich in natural gas liquids) produced from leased tribal land. In doing so, ARCO was ordered to pay additional royalties of $37,937.20 for 16 sample months and to compute and pay additional royalties for 80 remaining months in accordance with the MMS audit. We affirm.
 
 I. Facts
 
 4
 This action was brought by the Tribes against the Secretary and several oil companies that had mineral leases on tribal lands. The Tribes, owners in common of the minerals under the tribal lands, claimed that the oil companies had underpaid royalties due on gas produced and sold from the Wind River Indian Reservation. Defendants Chevron Oil Company, Continental Oil Company and Shell Oil Company are not involved in this appeal. The Secretary applied the "net realization" method to calculate the royalties due. That method requires ARCO to pay royalties based on the value of the residue gas and liquids after processing, minus a processing allowance.
 
 
 5
 In response to the complaint and correspondence from the Tribes, the MMS, a subdivision of the Department of the Interior, initiated an audit of the gas companies' leases with the Tribes, including the ARCO leases, to identify any royalty underpayment. Before the audit was completed, ARCO, the other defendants and the Secretary stipulated that:
 
 
 6
 all unresolved issues raised or to be raised by the [MMS] in its audits of royalty payments on natural gas and liquid products produced from the Wind River Indian Reservation leases which are the subject of this action shall be determined by this court [the district court] without the necessity of intervening administrative appeals.
 
 
 7
 After reviewing ACRO's comments, conducting an on-site inspection of ARCO's River Dome Gas Plant (RDGP) and surveying ARCO's previously filed royalty calculations, the MMS determined that several of ARCO's claimed cost deductions were improper. ARCO does not claim that there was any procedural error by MMS nor does ARCO raise any constitutional challenges. Rather, ARCO challenges the MMS conclusion that two cost items were nondeductible. Both cost items pertain only to the RDGP. First, ARCO contends that the MMS audit was wrong in disallowing ARCO's deduction for the cost of gas compression required both to manufacture and market the gas. Second, ARCO contends that the MMS audit was wrong in disallowing ARCO's deduction of a flat 10% of its allowable processing deductions to cover administrative overhead costs. Instead MMS required ARCO to specify and verify those expenses.
 
 
 8
 There being no material factual dispute, the controversy was submitted to the district court on cross-motions for summary judgment. The district judge granted the Tribes' and the Secretary's cross-motion and denied ARCO's cross-motion.
 
 II. Standard of Review
 
 9
 ARCO contends that the district court should have reviewed the decision of the MMS de novo. We disagree.
 
 
 10
 ARCO and the Secretary stipulated that any MMS audit findings which ARCO disputed would be resolved by the district court without the need for exhaustive administrative appeals. Had the parties proceeded through the administrative process to the district court, the district court would have reviewed the decision under the standard of review for final administrative actions. 5 U.S.C. Sec. 706(2)(A). The stipulation, short-cutting the administrative process, does not change the standard of review. Accordingly, in affirming the determinations of the MMS because they were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the district court applied the correct standard of review.
 
 
 11
 That the issue was raised on a motion for summary judgment does not alter the standard of review. There being no material factual question in dispute, the court correctly addressed the questions of law under the administrative standard of review.III. Disputed Cost Deductions
 
 
 12
 Our inquiry is under the same standard as that of the district court. We look to see whether the district court concluded correctly that the MMS judgment was not arbitrary, capricious, an abuse of discretion or contrary to law. See Marathon Oil Co. v. United States, 807 F.2d 759, 765 (9th Cir.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). We also note that the interpretation given by MMS to the applicable royalty and deduction regulations is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation[s]." Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); Wilder v. Prokop, 846 F.2d 613, 619 (10th Cir.1988). This deferential treatment to the administrative interpretation is lessened when the interpretation is inconsistent with the intent of the drafters, the plain language of the regulation or prior administrative interpretations. United Trans. Union v. Dole, 797 F.2d 823, 829 (10th Cir.1986).
 
 A. Statutory and Regulatory Provisions
 
 13
 The Indian Mineral Leasing Act of 1938, 25 U.S.C. Sec. 396 permits Indian tribes to grant mineral leases on tribal land with the permission of the Secretary of the Interior. The Secretary is delegated the authority to define the terms of the leases and to "make such rules and regulations as may be necessary for the purpose of carrying the provisions of [the] section into full force and effect...." The Secretary has exercised this authority both by drafting provisions in the ARCO leases and promulgating regulations. We look to those provisions and regulations to determine if the MMS acted arbitrarily, capriciously, with abuse of discretion or contrary to law in denying ARCO's claimed deductions.
 
 
 14
 B. Deduction Credits against Royalty Payments
 
 
 15
 ARCO argues that the MMS erred in disallowing deductions for the costs associated with its RDGP inlet compressors. ARCO also argues that the MMS erred in disallowing a flat 10% of allowable processing deductions to cover administrative costs. We address each objection individually.
 
 
 16
 1. Compression Costs in Manufacturing Allowance
 
 
 17
 Lease provision 3(c) provides that ARCO will pay a royalty based on the value of gas produced from the leased land. In determining the value of the gas produced, ARCO is permitted "a reasonable allowance for the cost of manufacture...." The Secretary has also promulgated regulations allowing for such a deduction. 30 C.F.R. Sec. 206.106(b) (1987). That regulation also provides that "no allowance shall be made for boosting residue gas, or other expenses incidental to marketing." Similarly, section V(A) of NTL-5, Notice to Lessees and Operators of Federal and Indian Onshore Oil and Gas Leases, 42 Fed.Reg. 22610, 22611 (1977) (NTL-5 Notice), issued by the Secretary to supplement the regulation, provides that marketing costs are nondeductible.
 
 
 18
 Finally, the U.S. Geological Survey, the predecessor to the MMS, provides guidance in determining what ARCO manufacturing costs are deductible.
 
 
 19
 Allowable investment costs are generally those expenditures for fixed assets (including delivery and installation costs) that are directly associated with the recovery of natural gas liquids. Most investment items are generally located within the confines of the plant, beginning at the inlet of the plant and ending at the tailgate of the plant, and shall be limited to those items which, in the judgment of the Supervisor, are an integral part of the extraction process.
 
 
 20
 Geological Survey, Conservation Division Manual, Part 647.7.3(D) (May 10, 1974) (CDM).
 
 
 21
 The plain meaning of the above lease provision and regulations is to disallow deduction of those expenditures related to marketing extracted gas. Consequently, if it was reasonable under the lease and applicable regulations for the MMS to conclude that the compressor costs were incidental to marketing, then MMS did not act arbitrarily, capriciously, with abuse of discretion or contrary to law in refusing to allow deduction of those costs.
 
 
 22
 The inlet compressors at issue are located in the RDGP facilities. Deposition testimony of ARCO petroleum engineers established that they perform dual functions. First, they increase the gas flow pressure within the plant allowing for efficient processing of the gas stream, a manufacturing function. Second, they increase the gas flow pressure to the level necessary to pass through the pipeline and ultimately to the purchaser of the gas, a marketing function.
 
 
 23
 The MMS audit concluded that the inlet compressor costs were nondeductible. Although the compressors serve a manufacturing function, the MMS interpreted the regulations as disallowing deductions for costs associated with marketing. This is not unreasonable.
 
 
 24
 First, manufacturing costs are deductible only if the Secretary determines that they are an "integral part" of the manufacturing process. CDM, Part 647.7.3(D). Thus, that determination is left to the discretion of the Secretary. Second, the Secretary's regulation, found at 30 C.F.R. Sec. 206.106(b) (1987), explicitly disallows deductions for costs incidental to marketing, as does section V(A) of the NTL-5 Notice, also issued by the Secretary, and CDM, Part 647.7.3(D). The interpretation by the MMS of these regulations does not conflict with their plain meaning and there is nothing to indicate that it is contrary to the intent of the regulations' drafter.
 
 
 25
 ARCO argues that the MMS judgment conflicts with prior administrative interpretation. Essentially, ARCO contends that because it has submitted royalty reports claiming deductions for the inlet compressor costs for the past twenty years, and because the deductions have never been rejected as improper, the MMS may not now change the long-standing rules of the game.
 
 
 26
 ARCO is correct that where an administrative agency interprets a regulation consistently over a long period of time, publicly, and through careful and sound reasoning, modifications of the interpretation should be scrutinized by the courts. Skidmore v. Smith, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (thorough, valid reasoning and consistency); Udall v. Tallman, 380 U.S. 1, 17-18, 85 S.Ct. 792, 801-02, 13 L.Ed.2d 616 (1965) (public record and discussion). Until now however, ARCO royalty reports were never challenged. This administrative acquiescence does not, therefore, rise to the level of long-standing policy.
 
 2. Unverified Costs in Overhead Allowance
 
 27
 The Conservation Division manual provides that deductions for overhead costs "shall be limited to ten percent of the other permitted operating and maintenance costs." CDM, Part 647.7.3(E)(9). Further, the deductible administrative costs "will generally be limited to those items which, in the judgment of the Supervisor, are an integral part of the extraction process. Such expenditures may be verified by requesting copies of the invoices." Id. at 647.3(E).
 
 
 28
 The MMS audit concluded that the overhead deduction can be as high as ten percent of the other permissible operating and maintenance costs, but that the overhead costs required verification. ARCO contends that this interpretation is in error because ARCO should be permitted to deduct the ten percent overhead allowance regardless of its ability to verify the costs. As its primary rationale, ARCO argues that for the past twenty years it has successfully deducted the ten percent without the need to verify costs and that, therefore, there is a long standing policy of allowing such deductions. However, as discussed above, this does not constitute a long standing policy. Furthermore, the MMS interpretation is consistent with the regulations.
 
 
 29
 Because the judgment of the MMS is not arbitrary, capricious, an abuse of discretion or contrary to law, we AFFIRM the judgment of the district court.
 
 
 
 *
 Honorable Lewis T. Babcock, United States District Judge for the District of Colorado, sitting by designation