**Joe FITZGERALD, Plaintiff,**

v.

**Louis CALDERA, Secretary of the United States Department of the Army, Defendant.**

**No. 97–CV–0710–EA.**

United States District Court, N.D. Oklahoma.

Jan. 20, 1999.

Steven M Angel, Oklahoma City, OK, for Joe Fitzgerald, plaintiff.

Peter Bernhardt, United States Attorney, Tulsa, OK, for United States Department of The Army, separately and Togo West secretary of the U.S. Department of the Army, Togo West, defendant.

## ORDER

EAGAN, United States Magistrate Judge.

This matter comes before the Court on Defendant's Motion for Summary Judgment with Brief in Support filed December 7, 1998 (Docket # 23). Defendant contends that it is entitled to summary judgment as a matter of law on the claims brought by plaintiff for judicial review of the Merit System Protection Board ("MSPB") decision affirming plaintiff's termination, and for *de novo* review of final agency decisions on plaintiff's allegations of disability and retaliation discrimination.

At issue also is Plaintiff's Motion for Partial Summary Judgment and Brief in Support Thereof filed December 7, 1998 (Docket # 19). Plaintiff contends that he is entitled to partial summary judgment as a matter of law on his claims for violation of the Rehabilitation Act of 1973 and for judicial review of the MSPB decision. For the reasons stated herein, the Court finds that Defendant's Motion for Summary Judgment should be **GRANTED**; and Plaintiff's Motion for Partial Summary Judgment should be **DENIED**.[1]

## I.

Plaintiff, Joe M. Fitzgerald, was employed by the United States Army Corps of Engineers, Tulsa District (the "Corps") from August 6, 1978 until June 28, 1996. He started as a park ranger, and in 1987 became a Lock and Dam Operator at Chouteau Lock and Dam Number 17 on the McClellan–Kerr Arkansas River Navigation System. As a Lock and Dam Operator, plaintiff was responsible for operating gates to allow shipping to pass through the lock and maintaining safety and security at the lock.

On October 12, 1994, Lock and Dam Operator Larry Cruzen, while changing into his coveralls in the Lock and Dam building's locker/bathroom, moved a vest belonging to plaintiff from a coat hook to a coat rack when a pipe fell from the vest pocket onto the floor. Mr. Cruzen notified the supervisor, Bill Kilpatrick. When the supervisor placed the pipe back into the vest pocket, he noticed there was a plastic bag containing a green leafy substance which appeared to be marijuana. The supervisor seized the pipe and the plastic bag, but left the vest hanging in the locker/bathroom. When plaintiff left work that day, he left his vest.

The Corps contacted the Department of Defense Inspector General, Defense Criminal Investigative Service ("DCIS") regarding the discovery of the pipe and the plastic bag. The DCIS conducted an investigation. The green leafy substance contained in the plastic bag found in plaintiff's vest pocket was analyzed to be marijuana, Schedule I, weight 1.1 grams.

Plaintiff made a sworn statement to the DCIS on December 1, 1994, in which he stated:

On October 12, 1994, I worked the midnight to 8:00 a.m. shift at the lock and dam. I inadverently [sic] left a marijuana pipe and a small quantity of marijuana in my vest pocket when I came to work. I hung the vest in the locker room area after I came to work.... After I got home the next day I noticed the pipe and marijuana missing from my vest pocket.

On January 10, 1995 a warrant was issued for plaintiff's arrest for possession of marijuana. On January 17, 1995 plaintiff was arrested, as he approached the Lock and Dam in his automobile, by Wagoner County Under Sheriff Johnny Cannon. Under Sheriff Cannon received plaintiff's consent to search his automobile. As a result of the search, two yellowish rock-like objects believed to be rock cocaine were found, as well as a plastic bag of yellowish powder believed to be methamphetamine. The Corps placed plaintiff in a non-duty paid status on January 19, 1995.

1. Plaintiff's Motion for Partial Summary Judgment (Docket # 19) is referenced herein as "Pltf's MPSJ"; Defendant's Motion for Summary Judgment (Docket # 23) as "Def's MSJ"; Defendant's Response Brief (Docket # 27) as "Def's Resp.Br."; Plaintiff's Response Brief (Docket # 32) as "Pltf's Resp.Br."; and Defendant's Reply Brief (Docket # 36) as "Def's Reply Br.".

On January 27, 1995 plaintiff was detailed to an unclassified position at the Corps' Fort Gibson facility, where he performed maintenance duties under close supervision. On March 20, 1995 plaintiff pled *nolo contendere* to a charge of possession of a controlled drug with intent to distribute in the Wagoner County District Court, State of Oklahoma. On May 18, 1995 the Corps proposed plaintiff's removal from federal service. Plaintiff was removed from federal service on July 21, 1995 for (1) possession of marijuana and a marijuana pipe on government property while on duty; (2) possession of cocaine on government property; and (3) loss of trust and confidence in him to perform his job as Lock and Dam Operator. Plaintiff appealed his removal from federal service to the MSPB.

On September 28, 1995 the Corps became aware that the Oklahoma State Bureau of Investigation test results indicated that the substance seized from plaintiff's automobile was not cocaine, but was methamphetamine (also known as "speed"). The Corps canceled the removal action on October 4, 1995, and returned plaintiff to duty in the unclassified maintenance position at Fort Gibson on October 10, 1995. The MSPB dismissed plaintiff's appeal as moot based on the Corps' cancellation of the removal of plaintiff. On November 30, 1995, plaintiff filed an informal EEO complaint based on his assignment to Fort Gibson, delayed wages, and unpaid leave issues.

The Corps issued a February 20, 1996 proposal to remove plaintiff for introducing and possessing marijuana and a marijuana pipe while in a duty status on government property at the government facility and for introducing and possessing methamphetamine on government property at the facility. Plaintiff, through his attorney Steven M. Angel, filed a formal EEO Complaint on April 26, 1996, incorporating his earlier informal complaint relating to the Fort Gibson assignment, delayed wages and unpaid leave.

The Corps, through Larry Hogue, Chief of the Operations Division, removed plaintiff effective June 28, 1996, on the charges of introduction and possession of marijuana and methamphetamine on government property. Plaintiff filed a timely appeal of his removal with the MSPB on July 23, 1996. The MSPB upheld the Corps' removal action and denied plaintiff's disability and retaliation discrimination claims by Initial Decision dated December 11, 1996.

On February 14, 1997 plaintiff filed a Petition for Review of the MSPB Initial Decision with the Equal Employment Opportunity Commission ("EEOC"), Office of Federal Operations. On June 27, 1997 the EEOC issued its decision concurring with the MSPB's finding of no discrimination. On August 4, 1997 plaintiff filed his Complaint in this case.

With respect to plaintiff's April 1996 EEO Complaint, the Secretary of the Army, through the Department of the Army EEO Compliance and Complaints Review Agency, issued a Final Decision on November 17, 1997 finding that plaintiff was not the victim of discrimination on the basis of his alleged physical and mental disabilities (drug dependency and depression).

Plaintiff filed an Amended Complaint in this case on February 17, 1998, which in addition to seeking judicial review of the MSPB decision previously requested in the Complaint, added a request for *de novo* review of the final agency decision on his EEO Complaint alleging disability and retaliation discrimination.

## II.

Summary judgment pursuant to Fed. R.Civ.P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir.1993), *cert. denied,* 510 U.S. 1120, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994).

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex,* 477 U.S. at 317, 106 S.Ct. 2548.

"Summary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct. 2548. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). "There mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250, 106 S.Ct. 2505. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir.1991).

### III.

This is a "mixed case," which involves both discrimination and non-discrimination claims. *Williams v. Rice,* 983 F.2d 177, 179 (10th Cir.1993). The standard of review for the discrimination claim is *de novo.* 5 U.S.C. § 7703(c). The other, non-discrimination claims are reviewed on the administrative record. *Williams,* 983 F.2d at 179 (citation omitted).

■ The MSPB decision must be upheld unless it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c); *Williams,* 983 F.2d at 180. This Court "may not substitute its judgment for that of the MSPB." *Wilder v. Prokop,* 846 F.2d 613, 619 (10th Cir.1988). The arbitrary and capricious standard requires that the MSPB decision have a rational basis in law. *Id.* at 620.

### IV.

Plaintiff and defendant have filed cross-motions for summary judgment on the judicial review of final MSPB decision as to the non-discrimination claims: plaintiff seeks reversal of the MSPB decision (Pltf's MPSJ at 24–25), and defendant seeks affirmance (Def's MSJ at 8–12, 21–25). The Court finds that the MSPB decision should be affirmed.

### A. *The MSPB Decision Is Not Arbitrary, Capricious or Unsupported by Substantial Evidence*

■ Pursuant to Army Regulation 690–700, it is an offense warranting punitive discipline to introduce a controlled substance to a work area or government installation for personal use. (Pltf's MPSJ, Ex. 10, at 10.) In the MSPB proceedings, defendant had the burden of proving by a preponderance of the evidence that plaintiff introduced and possessed marijuana, a marijuana pipe, and methamphetamine on government property. 5 C.F.R. § 1201.56(a)(1)(ii) and (c)(2). The facts relating to the discovery of the marijuana and marijuana pipe, and of the methamphetamine, are undisputed. The marijuana and marijuana pipe were in the pocket of a vest which plaintiff brought to work on government property. The plaintiff gave a sworn statement on December 1, 1994, wherein he admitted he brought marijuana and a marijuana pipe to work in his vest pocket. The methamphetamine was found (after plaintiff consented to a search) in plaintiff's car as he drove it to work on government property.[2] Both substances

---

2. At the MSPB, plaintiff argued that his car was not on government property at the time of the search. Defendant introduced credible evidence that plaintiff's car was on government property

when the methamphetamine was seized. (MSPB Rec., Vol. 5, Transcript of October 15, 1996 Hearing Before the MSPB ["MSPB Hrg. Tr."] at 89–93; MSPB Rec., Vol. 3, Tab rrr.) Plaintiff

were tested and found to be controlled substances. The plaintiff pled *nolo contendere* to possession of a controlled substance and received a suspended sentence. There was and is no credible evidence to contradict the fact of the introduction and possession of controlled substances on government property. Based upon a review of the entire administrative record, the Court finds that there is substantial evidence to support the MSPB decision.

As discussed below, plaintiff contended at his administrative hearing that he did not intend to possess, or did not knowingly possess, the controlled substances on government property. (MSPB Hrg. Tr. at 162–63) The MSPB Administrative Law Judge ("ALJ") found that plaintiff was not credible when he testified that he did not know the methamphetamine was in his car. (MSPB Rec., Vol. 1, Tab 16, at 5.) Credibility findings are the province of the ALJ. *United States v. Silvers*, 84 F.3d 1317, 1328 (10th Cir.1996), *cert. denied* ⸺ U.S. ⸺, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997). Plaintiff has provided no basis to disturb the ALJ's findings or the MSPB decision. The Court finds that the MSPB decision has a rational basis in law (the acts in question constitute a crime and a violation of federal regulations), and thus is not arbitrary and capricious. *Wilder*, 846 F.2d at 620.

The plaintiff argues that the MSPB penalty of removal is too severe, and that his misconduct would support only a 3–day suspension. (Pltf's Resp.Br. at 9–11.) The cases cited by plaintiff in support of his argument stand for the proposition that the determination of the appropriate penalty is a matter committed to the sound discretion of the employing agency (the Corps), and that this Court must defer to the Corps' choice of penalty unless it exceeds the range of permissible punishment set by law or regulation, or "unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Webster v. Department of the Army*, 911 F.2d 679, 686 (Fed.Cir.1990), *cert. denied*, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991) (quoting *DeWitt v. Department of the Navy*, 747 F.2d 1442, 1445 (Fed.Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985)); *Jones v. Secretary, Dep't of the Army*, 912 F.Supp. 1397, 1415 (D.Kan.1995). In *Jones*, the court upheld the termination of an employee for conduct unbecoming a federal employee despite the fact that this was the employee's first offense and she had a very good past work record. 912 F.Supp. at 1415.

In *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981), the MSPB set forth twelve factors which may be considered in determining what penalty is appropriate, including the nature and seriousness of the offense and its relation to the employee's job duties, the employee's past record,[3] and the effect of the offense on performance and supervisory confidence. *Id.* at 306. Not all factors will be pertinent in every case. *Parker v. United States Postal Service*, 819 F.2d 1113, 1116 (Fed.Cir.1987). The ALJ need not consider every one of the *Douglas*

offered no credible evidence to the contrary. (*See, e.g.*, MSPB Hrg. Tr. at 93–94 .) The finding of the ALJ that the methamphetamine was found on government property is supported by substantial evidence.

**3.** Plaintiff argues first offense. Plaintiff is correct that, prior to his discharge, plaintiff had no *sustained* disciplinary action against him. However, plaintiff was previously removed from the position as a Lock and Dam Operator, effective September 11, 1992, for loss of trust in his ability to perform his job due to his plea of guilty to three felony charges of: (1) unlawful possession of marijuana with intent to distribute; (2) unlawful cultivation of marijuana; and (3) use of a weapon in the commission of a crime. (MSPB Rec., Vol. 2, Tab 4eee.) However, the MSPB Initial Decision affirming the removal was reversed by a three member MSPB appeal panel (with one member dissenting) on the ground that the agency erroneously relied for removal upon plaintiff pleading guilty instead of *nolo contendere*. Even though the *nolo contendere* plea constituted a conviction, the agency did not cite that as a basis for removal and could therefore not rely on it according to the Board. Plaintiff was accordingly ordered reinstated in May 1994. (MSPB Rec., Vol. 2, Tab 4ccc; *Fitzgerald v. Department of the Army*, 61 M.S.P.R. 426 (1994).) To argue that plaintiff had "an otherwise spotless record" (Pltf's Resp.Br. at 11) is slightly disingenuous because the reversal of the September 1992 removal was based on a technicality similar to the one that caused the withdrawal of plaintiff's July 1995 removal. In any event, the issue with regard to the severity of the June 1996 removal is whether, considering the *Douglas* factors, the penalty was appropriate. *Douglas*, 5 MSPB 313, 5 M.S.P.R. at 306.

factors mechanistically or by a preordained formula. *Webster*, 911 F.2d at 686; *Jones*, 912 F.Supp. at 1415.

■ Here, it is undisputed that the agency's table of penalties provides for a penalty ranging from a 3–day suspension to removal for the offenses committed, two charges of unauthorized introduction and possession of a controlled substance to a work area on government property. (Pltf's MPSJ at 23; Pltf's MPSJ, Ex. 10.) In his decision to remove, Larry Hogue exercised his discretion to impose the strongest penalty warranted due to plaintiff's egregious conduct and as a deterrent to other lock and dam operators. Mr. Hogue explained the exercise of his discretion as follows:

> Moreover, the responsibility of lock and dam operators is significant and the risk associated with errors made by them are [sic] equally significant. Your position as an operator demands a high degree of trust. Bringing illegal drugs to the work site on two occasions within approximately three months is flagrant and a disregard for the responsibilities expected of a lock operator. As stated by Mr. Johnson, it would be irresponsible to have you work as a lock operator.

(June 28, 1996 Decision to Remove, Pltf's MPSJ, Ex. 9, at 2.) Mr. Hogue reviewed most of the *Douglas* factors and concluded that "[c]onsideration of other factors such as your work and performance history were offset by the seriousness and nature of the offenses." (*Id.*) The position of lock and dam operator is safety-related and requires a high degree of trust and confidence. The Court finds that the Corps' exercise of discretion was sound, the penalty chosen was not grossly disproportionate to the offense, and it is not so harsh that it amounts to an abuse of discretion. *Webster*, 911 F.2d at 686; *Parker*, 819 F.2d at 1116; *Jones*, 912 F.Supp. at 1415.

### B. The MSPB Decision Is Not Contrary to Law and Does Not Violate Regulations

#### 1. Not Violative of Regulations

■ Plaintiff argues that his removal violates defendant's regulation addressing rehabilitation of drug abusers. Defendant has an Employee Assistance Program ("EAP"), which provides assistance such as health and counseling services to an employee suffering from drug abuse. (Army Memorandum No. 690–1–1, Pltf's MPSJ, Ex. 3; Pltf's MPSJ at 25; Pltf's Resp.Br. at 8–9; Pltf's MPSJ, Ex. 3.) Plaintiff was removed for drug possession, not drug use or abuse. The Decision to Remove documents the loss of trust based on possession of controlled substances at the workplace. (Pltf's MPSJ, Ex. 9.) The regulation relied on by plaintiff is inapplicable because it relates to a situation where a supervisor recognizes a "continuous job performance problem" based on drug abuse, and ordinary supervisory methods are unsuccessful in resolving the problem. (Pltf's MPSJ, Ex. 3, at 3.) Further, an employee who violates the rules of conduct "will normally not be exempted from disciplinary action even though [he] seek[s] assistance and enroll[s] in the program." (*Id.*) Plaintiff violated the agency's rules of conduct, and was guilty of egregious behavior. Defendant was within its rights to terminate plaintiff for such behavior. *Williams v. Widnall*, 79 F.3d 1003, 1007 (10th Cir.1996) ("*Widnall* ").

Next, plaintiff argues that he did not intend to possess the marijuana in the workplace (he "inadvertently" left it in his vest), and he did not knowingly possess the methamphetamine (his consent to a search of his car shows he did not know it was there). The offense charged is "introduction of controlled substance to a work area or government installation for personal use." (AR 690–700, Pltf's MPSJ, Ex. 10, ¶ 13a, at 10.) Plaintiff cites no authority for the proposition that intent or knowledge is a prerequisite for such a charge, and the Court finds that the plain language of the regulation defeats this argument. The words "knowingly" and/or "intentionally" are clearly absent. Further, the MSPB found that plaintiff failed to offer credible evidence that his possession of the controlled substances was without his knowledge or that the substances belonged to someone else. (MSPB Rec ., Vol. 1, Tab 16, at 5.) Plaintiff has failed to demonstrate that his removal violates defendant's regulations.

#### 2. No Unconstitutional Search or Seizure

There is no dispute between the parties as to the facts surrounding the Corps' discovery on October 12, 1994 of the contents of a vest

belonging to plaintiff. A pipe fell from plaintiff's vest when Larry Cruzen, a co-worker, moved the vest from a coat hook to a coat rack in the Lock and Dam building's locker/bathroom. Cruzen showed the pipe to his supervisor, Bill Kilpatrick, who attempted to put the pipe back into the vest. When Mr. Kilpatrick made the attempt, he discovered a plastic bag containing a green leafy substance. (Def's MSJ at 2; Pltf's Resp.Br. at 2; Pltf's MPSJ at 4–5 .) Plaintiff left the vest in the locker/bathroom when he left work that day. (See MSPB Rec., Vol. 1, Tab 16, at 10.) He later admitted in a sworn statement to the DCIS on December 1, 1994: "I inadverently [sic] left the marijuana pipe and a small quantity of marijuana in my vest pocket when I came to work. I hung the vest in the locker room area after I came to work.... After I got home the next day I noticed the pipe and marijuana missing from my vest pocket."[4] (MSPB Rec., Vol. 2, Tab 4oo; Def's MSJ at 6; Pltf's Resp.Br. at 2.) The parties had a full opportunity to conduct discovery and present evidence as to these facts at the MSPB hearing, and the MSPB heard the evidence at the hearing on October 15, 1996.

Plaintiff argued that the Corps' actions constituted an unreasonable search and seizure in violation of the Fourth Amendment, and, as a result, the MSPB should have excluded the subsequent warrant for his arrest and the search of his automobile. The ALJ heard the testimony of plaintiff, the supervisor and two other witnesses. (MSPB Rec., Vol. 1, Tab 16, at 11.) At the MSPB hearing, plaintiff testified that he did not know about the marijuana left in his vest pocket until inspectors later told him about it. (MSPB Hrg. Tr. at 162.) This testimony directly contradicts his earlier statement, and the ALJ was justified in disregarding it. He determined that plaintiff had no reasonable expectation of privacy in the contents of his vest because he left it hanging in a public place at work, the locker/bathroom. (MSPB Rec ., Vol. 1, Tab 16, at 10–11.) The ALJ's decision and the MSPB's determination in this regard are supported by substantial evidence and are in accordance with applicable law.

■ Both parties cite to *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), in which the Supreme Court held that federal employees have a constitutionally-protected right of privacy with respect to areas in the workplace where there is a reasonable expectation of privacy.[5] The area searched in that case was a doctor's personal office, desk and file cabinets. The area in this instance was a locker/bathroom for the use of all male employees at the lock and dam facility, not an office reserved for plaintiff's use. Further, if the discovery of the plastic bag in the vest constitutes a "search" by plaintiff's supervisor, it cannot be said that the supervisor searched plaintiff's person or any "container" belonging to him such as a suitcase, briefcase or gym bag. The supervisor searched an article of plaintiff's clothing left unattended in an open area of the workplace where other co-workers were present throughout the day. The vest was not within his immediate control at the time the items in the pocket were seized.[6] *Cf.*

---

**4.** Plaintiff's belated attempt at the October 1996 hearing to imply that someone else may have planted the pipe or marijuana in his vest (MSPB Hrg. Tr. at 162) is incredible, given this statement he made in December of 1994, only two months after the first incident giving rise to his termination.

**5.** In general, the "unreasonableness" of the search and seizure is a factual determination precluding summary judgment. *See O'Connor*, 480 U.S. at 726–29, 107 S.Ct. 1492. Unlike the procedural posture of *O'Connor*, however, an evidentiary hearing has been held in this case, and neither party disputes that summary judgment is appropriate; their dispute is *as to whom*. At this stage, the primary issue is not whether the search and seizure was unreasonable, but whether the MSPB's determination of the issue was

correct. (Deft's MSJ at 10–12; Pltf's Resp.Br. at 6–8; Deft's Reply Br. at 2–4; Pltf's MPSJ, at 25; Deft's Resp.Br. at 8.) The Court's role in this matter is not to decide the search and seizure issue *de novo*, but to determine if the MSPB's decision was arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law. *See* 5 U.S.C. § 7703(c); *Williams v. Rice*, 983 F.2d 177, 179–80 (10th Cir.1993); *Wilder v. Prokop*, 846 F.2d 613, 621 (10th Cir.1988).

**6.** In fact, in an attempt to distance himself from the marijuana possession, plaintiff states as fact with regard to his vest: "... it was in a common area, not in the possession of plaintiff, and it was uncertain how long it had been hanging in the changing area...." (Pltf's Resp.Br. at 4; *see also* Pltf's MPSJ at 4–5.)

*United States v. Anderson,* 154 F.3d 1225, 1232 (10th Cir.1998).

In cases involving similar issues, courts have held that no legitimate or reasonable expectation of privacy exists as to an article of clothing left in a public building or place. *See United States v. Alewelt,* 532 F.2d 1165, 1168 (7th Cir.), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976) ("[B]y placing the jacket on a coatrack in the general working area of an outer office where he had no possessory interest, the defendant relinquished that degree of control, and reasonable expectation of privacy, necessary to sustain a challenge to the legality of the subsequent search and seizure on Fourth Amendment grounds"); *People v. Juan,* 175 Cal.App.3d 1064, 1069, 221 Cal.Rptr. 338 (Cal.Ct.App.1985) (defendant "had no reasonable expectation of privacy with regard to his jacket left draped over a chair at an empty table in a restaurant" that would subject a warrantless examination of the jacket's contents to a constitutional challenge); *see also United States v. Miller,* 13 M.J. 75 (CMA 1982) (where defendant left his jacket in another person's unattended, unsecured automobile, he assumed the risk that the owner of the automobile might look inside the jacket or give his consent to someone else to search it; therefore, defendant abandoned any legitimate expectation of privacy in the contents of the jacket upon which to base a claim for Fourth Amendment protection). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

If plaintiff was concerned about his privacy, he could have taken actions indicating that he intended that no one search or even move his vest. He did not place it in an office, locker, desk or cabinet designated solely for his use or otherwise conceal it. There is no indication even that the hook on which it hung was his own. There is no evidence indicating that the vest pockets could have been or were zipped, snapped, buttoned or otherwise fastened to prevent the pipe or the plastic bag itself from falling out. As the Supreme Court stated: "The employee may avoid exposing personal belongings at work by simply leaving them at home." *O'Connor,* 480 U.S. at 725, 107 S.Ct. 1492. The Tenth Circuit has also emphasized that "it is appropriate to consider whether an employee took steps to keep his personal property private in the workplace in determining whether the employee had a reasonable expectation of privacy in the area searched." *United States v. Anderson,* 154 F.3d 1225, 1232 (10th Cir.1998).

The *O'Connor* Court stated that "the operational realities of the workplace ... may make some public employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement official." 480 U.S. at 717, 107 S.Ct. 1492. Granted, the supervisor suspected that plaintiff used drugs. (MSPB Hrg. Tr. at 53–54.) The presence of the pipe may have lent credence to that suspicion. Yet the supervisor also had a duty to ensure the safety of the lock and dam operation—a concern that is directly linked to plaintiff's performance. If plaintiff's performance was hindered by his use of drugs, it would behoove his supervisor to know about it. There is no requirement that a search, to be reasonable, yield surprising results to the searcher. Government searches to investigate violations of workplace rules do not violate the Fourth Amendment as long as they are reasonable. *See O'Connor,* 480 U.S. at 725–26, 107 S.Ct. 1492.

Given the undisputed facts in this matter, it cannot be said that plaintiff has shown a "subjective expectation of privacy" that "society is prepared to recognize as reasonable." *See Anderson,* 154 F.3d at 1229 (citations omitted).[7] Accordingly, the MSPB's decision was not arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law. *See, e.g., Williams,* 983 F.2d at 179–80.

---

7. Plaintiff has alleged that the search of his car was also illegal, even though he consented to it. Apparently, his argument that the search of his car was illegal is based on his allegation that the search of his vest was illegal, because the vest search led to the arrest warrant which triggered the search of his car. This is a "fruit of the poisonous tree" argument. Since the Court upholds the MSPB decision regarding the search of his vest as not violative of any expectation of privacy, the Court finds that the search of the car was legal, since plaintiff gave his consent.

### 3. Laches and Collateral Estoppel Inapplicable

Plaintiff contended before the MSPB that the Corps' removal action was barred by laches (delay in investigation and removal) and collateral estoppel (agency "reversal" of initial removal action). Although plaintiff did not reference laches or collateral estoppel in his Complaint, Amended Complaint, or motion for summary judgment, defendant moved for summary judgment on these issues. (Def's MSJ at 21–24.) Plaintiff failed to respond to defendant's evidence or arguments. (*See* Pltf's Resp.Br.) [8] For this reason alone, summary judgment is appropriate as to these issues. *Celotex*, 477 U.S. at 317, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348.

■ However, a review of the MSPB administrative record demonstrates that defendant is also entitled to summary judgment on the merits of these issues. With regard to laches, charges are dismissible as stale if an agency's delay in processing the adverse action is unreasonable and the complainant is prejudiced. *Jorgensen v. United States Postal Service*, 42 M.S.P.R. 442, 445 (1989); *Haine v. Department of the Navy*, 41 M.S.P.R. 462, 471 (1989). Evidence was presented at the administrative hearing that DCIS investigations require approval by several authorities, are not initiated until approved, and in this case took several weeks to initiate and several additional weeks to complete. (MSPB Hrg. Tr. at 65–66, 69–73 .) Larry Hogue testified that it then took time to receive the DCIS evidence, to process the removal action, to receive the lab report for the methamphetamine, to cancel the initial removal action and start over, and to correspond with plaintiff's counsel before the June 28, 1996 removal. The Corps' personnel office also relocated during this period, adding to the delay. (*Id.* at 108–10.) The ALJ found the explanation satisfactory, and did not find the delay *per se* unreasonable.

(MSPB Rec., Vol. 1, Tab 16, at 12.) The ALJ found that plaintiff was not prejudiced by the delay because he gave a December 1, 1994 sworn statement as to how the marijuana and marijuana pipe came to be in his vest, and because it is improbable that plaintiff would forget the circumstances of his January 17, 1995 arrest and search of his car, given his assertion that it shocked him (MSPB Rec., Vol. 1, Tab 12, at 9), and it could have resulted in imprisonment upon conviction. Having reviewed the entire record, the Court finds that the MSPB finding on laches is supported by substantial evidence and is not contrary to law.

■ As to collateral estoppel, the Tenth Circuit requires four elements:

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. (Citations omitted.)

*Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir.1992), *cert. denied*, 507 U.S. 1042, 113 S.Ct. 1879 , 123 L.Ed.2d 497 (1993). Plaintiff's reference to agency "reversal" was defendant's cancellation of the initial removal action when it was determined that the substance found in plaintiff's car was methamphetamine, not cocaine,[9] and the MSPB's dismissal of plaintiff's appeal as moot. The MSPB found that collateral estoppel did not apply to this matter. This Court agrees. The charges being reviewed were not finally adjudicated on the merits in the prior MSPB action, because the first removal action was withdrawn by the agency prior to final decision by the MSPB. *See Peartree v. United States Postal Service*, 66 M.S.P.R. 332, 341 (1995).

---

8. The Court recognizes that plaintiff has raised the Corps' delay in issuance of the second notice of removal between October 1995 and February 1996 as evidence of reprisal (Pltf's Resp.Br. at 19); that argument is addressed in Section V, *infra*.

9. In fact, if the Corps did not cancel the removal to correct the charges, it would have been in the same situation as before where plaintiff successfully won reversal and reinstatement for Corps error in reliance in its removal notice on a "guilty" plea instead of *"nolo contendere"* plea. *See* footnote 3, *supra*.

The MSPB decision was not arbitrary or capricious or contrary to law, and was supported by substantial evidence. Summary judgment is proper as to the non-discrimination claims presented to the MSPB.

## V.

Plaintiff sued for disability discrimination under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791,[10] and both parties moved for summary judgment on this claim.[11] To establish a *prima facie* case in a section 501 action, plaintiff must show that he is a disabled person, that he was otherwise qualified apart from his disability, *i.e.*, with or without reasonable accommodation he could perform the job's essential functions, and that he was discriminated against because of the disability. *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir.1997). The burden-shifting framework set forth in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable. *Widnall*, 79 F.3d at 1005 n. 3. Plaintiff must first establish a *prima facie* case before the burden shifts to defendant to show a nondiscriminatory reason for its action, after which plaintiff may attempt to show defendant's proffered reason was pretextual. *Id.*

### A. *Plaintiff Has Failed to Establish a Prima Facie Case*

#### 1. Plaintiff Is Not Disabled

The first inquiry is whether plaintiff is an "individual with a disability" entitled to the Act's protections. Plaintiff claims that his disability is chemical dependence, *i.e.*, drug addiction (Pltf's MPSJ at 8, 13–14), and that he was terminated because of his disability.

Under section 501 of the Act, an individual with a disability is

any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(B); 29 C.F.R. § 1614.203(a)(1). Major life activities are defined as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3).

Plaintiff claims he has a chemical dependency,[12] which defendant does not dispute. (*See, e.g.*, Def's MSJ at 12.) Defendant argues on summary judgment that plaintiff cannot make a *prima facie* case because he is unable to show that he meets the requirement of 29 U.S.C. § 706(8)(B) of an impairment substantially limiting a major life activity, or the requirements of 29 U.S.C. § 706(8)(C) that he is a person who successfully completed a supervised drug rehabilitation program and was no longer engaging in such use.

■■■ Other than the testimony of plaintiff's counselor, Randy VanNostrand, Ph.D., that marijuana use in general affects cognitive functions (memory) and can affect performance in safety-sensitive jobs (MSPB

---

**10.** While this Court is mindful of the amendment to the Rehabilitation Act effective August 7, 1998, including the amendment of 29 U.S.C. § 706 (now § 705), all references herein are to the Act before the 1998 amendment because all actions complained of occurred, and the lawsuit was filed, prior to 1998. The Court follows the time-honored presumption against retroactive legislation that applies unless Congress has clearly manifested its intent to the contrary. *See, e.g., Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). The Court finds no such contrary intent in the language of the amendment. The Court also notes that the Tenth Circuit has declined to apply previous amendments to the Rehabilitation Act retroactively. *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.*, 911 F.2d 1377, 1393 (10th Cir.1990), *cert. denied*, 498

U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).

**11.** In his Amended Complaint, plaintiff alleges that jurisdiction "is invoked pursuant to the Civil Rights Act of 1964, as amended," and that jurisdiction "is provided for by ... 42 U.S.C. § 2000e–16." The Court finds that the result would be the same under the Rehabilitation Act and Title VII.

**12.** Plaintiff first notified defendant of this claim in his attorney's June 27, 1995 letter, after receipt of the first notice of proposed removal. (MSPB Rec., Vol 2, Tab 4p.) By plaintiff's own admission, he denied he had a drug problem until after his arrest in January 1995. (MSPB Hrg. Tr. at 163–64.)

Hrg. Tr. at 153–54), plaintiff has failed to present evidence of a substantial limitation of one of *his* major life activities as a result of chemical dependency. Nor does plaintiff address this issue. (*See* Pltf's Resp.Br. at 14–15.) Instead, plaintiff argues that he was "regarded as having such an impairment," (*see* 29 U.S.C. § 706(B)), which is defined as one who:

> ... has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or has none of the impairments defined in paragraph (a)(2) of this section but is treated by an employer as having such an impairment.

29 C.F.R. § 1614.203(a)(5). To support this argument, plaintiff states that "defendant testified that it had regarded plaintiff as having a 'drug problem' since 1991." (Pltf's Resp.Br. at 15; *see* Pltf's MPSJ at 2, 15.) There is no question that Bill Kilpatrick, plaintiff's supervisor, testified that he believed since 1991 that plaintiff had a drug problem. (MSPB Hrg. Tr. at 49.) However, plaintiff presented no evidence that the Corps treated plaintiff as having a physical or mental impairment substantially limiting major life activities or that the Corps caused such an impairment by its attitude. Thus, plaintiff fails to meet the Act's definition of a disabled person under 29 U.S.C. § 706(8)(B).

 Plaintiff argues in the alternative that he falls within the language of 29 U.S.C. § 706(8)(C)(ii). However, 29 U.S.C. § 706(8)(C) *excludes* from the term "individual with a disability," an individual who is currently engaging in the illegal use of drugs *when an employer acts on the basis of such use,* unless the individual, *inter alia,* has successfully completed a supervised rehabilitation program, has otherwise been rehabilitated, or is participating in a supervised rehabilitation program, and is no longer engaging in such use.[13] Plaintiff does not fall within this subsection because it relates to a situation where an employer acts on the basis of illegal drug *use,* and here the employer acted on the basis of drug *possession* at the work place on government property.[14]

Thus, plaintiff has failed to meet his burden as to the first element that he is a disabled person under section 501 of the Rehabilitation Act.

### 2. Plaintiff Was Not Otherwise Qualified Apart From His Disability

 Even if plaintiff could show he was a disabled person under the Act at the time of his proposed removal, to establish the second element of a *prima facie* case he would have to show that he could perform the essential functions of his job with or without accommodation. Plaintiff contends that he was qualified, or would have been qualified, to perform the essential functions of his job had defendant provided reasonable accommodation for his chemical dependency.[15] (Pltf's MPSJ at 11–21.)

As noted above, Mr. Kilpatrick did testify that he believed that plaintiff had a drug problem. However, Mr. Kilpatrick also testified that when he asked plaintiff if he had a drug problem, plaintiff would deny it. (MSPB Hrg. Tr. at 50.) This evidence is uncontroverted. Plaintiff himself admits that he denied he had a drug problem until after

---

13. Although both parties briefed the issue of whether the notice of removal or the removal itself is the relevant date for purposes of determining whether such person is engaging in drug use (compare *Little v. United States Postal Service,* 66 M.S.P.R. 574, 583–84 (1995), with *Teahan v. Metro–North Commuter Railroad,* 951 F.2d 511 (2d Cir.1991), *cert. denied,* 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992)), it is not necessary to reach that issue based on the finding herein that this subsection does not apply.

14. Defendant also argues that plaintiff offered no credible evidence that he was not engaged in illegal drug use at the time of his proposed removal, because he had two positive urinalysis test results indicating drug use as of July 31, 1995 and January 3, 1996. (Def's MSJ at 13; MSPB Hrg. Tr. at 150.) That issue need not be addressed because 29 U.S.C. § 706(8)(C) is inapplicable.

15. It is undisputed that plaintiff sought and received treatment for his chemical dependency from July 1995 up until his MSPB hearing in October 1996. (MSPB Hrg. Tr. at 149.)

his arrest in January 1995. (*Id.* at 163–64.) If plaintiff had acknowledged his problem prior to January 1995 and asked for participation in the EAP and reasonable accommodation, if necessary, the result in this case might have been different. However, it is incumbent upon the employee to come forward:

> Without question, employees must come forward with that information they are best placed to know—the fact and nature of their disability and their wish to be accommodated. In other words, employers are not required to initiate the inquiry into whether a given employee with a disability can be accommodated. *See Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991) (holding that while employer does not have the initial burden of raising the issue of accommodation, once the employee has done so, "in light of the goals of the Rehabilitation Act and the greater access of the employer to information regarding the feasibility of various possible job modifications, the employer is given the ultimate burden of proof on the issue of reasonable accommodation").

*Woodman*, 132 F.3d at 1344.

Reasonable accommodation was not required because plaintiff did not come forward in a timely fashion (before his egregious behavior) to identify his disability and request accommodation. Plaintiff's counsel's belated request for accommodation in June 1995, after the January 1995 arrest and subsequent notices of removal (MSPB Rec., Vol. 2, Tab 4p), is ineffective to deprive the Corps of its right to terminate plaintiff for egregious conduct. Defendant is under no obligation to wait until plaintiff successfully completes a program if he is found to have engaged in egregious conduct, even if the egregious conduct may be an attribute of the disability, and not the disability itself. *See Widnall*, 79 F.3d at 1007. In *Widnall*, the employee argued that he could not be terminated for threats he made to his supervisor and co-workers because he suffered from alcoholism, was in a treatment program, and the threats were an attribute of his alcoholism. The Tenth Circuit stated, in rejecting that argument:

> We disagree. We cannot adopt an interpretation of the statute which would require an employer to accept egregious behavior by an alcoholic employee when that same behavior, exhibited by a nondisabled employee, would require termination. We agree that "an employer subject to the Rehabilitation Act must be permitted to terminate its employee on account of egregious misconduct, irrespective of whether the employee is handicapped." *Little v. FBI*, 1 F.3d 255, 259 (4th Cir.1993). There the court noted that an "employer 'may hold a[n] ... alcoholic to the same standard of performance and behavior to which it holds others, even if any unsatisfactory performance or behavior is related to the person's ... alcoholism.'" *Id.* at 258 (quoting 42 Fed.Reg. 22,686 (1977)). We agree with the view that "the Act does not protect alcoholics or drug addicts from the consequences of their misconduct." 1 F.3d at 258.

*Id. See also Nielsen v. Moroni Feed Company*, 162 F.3d 604, 609 (10th Cir.1998); *Maddox v. University of Tennessee*, 62 F.3d 843, 847–48 (6th Cir.1995); *Little v. FBI*, 1 F.3d 255, 258–59 (4th Cir.1993). The Tenth Circuit in *Widnall* acknowledged that this ruling applies to both alcoholism and drug addiction. *Id.*, quoting *Little*, 1 F.3d at 258.[16] The reason for this holding was succinctly stated in *Maddox*, and quoted by the Tenth Circuit in *Widnall*:

> "it strains logic to conclude that such [egregious or criminal] action could be protected under the Rehabilitation Act ... merely because the actor has been diagnosed as an alcoholic and claims that such action was caused by his disability."

*Widnall*, 79 F.3d at 1007 (quoting *Maddox*, 62 F.3d at 848). The plaintiff has thus failed to meet the second element of a *prima facie* case under section 501 that he was "otherwise qualified" for his position.

---

**16.** The Secretary of Health, Education and Welfare, in promulgating regulations under section 501, "specifically stated that the employer 'may hold a drug addict or alcoholic to the same standard of performance and behavior to which it holds others, even if any unsatisfactory performance or behavior is related to the person's drug addition or alcoholism.'" *Little*, 1 F.3d at 258 (quoting 42 Fed.Reg. 22,686 (1977)).

### 3. Plaintiff Was Not Discriminated Against Based on Disability

 Finally, as to the third element of a *prima facie* case, plaintiff cannot meet his burden to show that he was terminated because of his disability. It is beyond dispute that plaintiff's termination resulted from his misconduct rather than his disability of chemical dependency. There is a distinction between removal for unacceptable misconduct and removal because of disability. *Widnall*, 79 F.3d at 1007; *Maddox*, 62 F.3d at 847; *Little*, 1 F.3d at 258–59 (citing to the legislative history of the implementing regulations for section 501). While chemical dependency might compel plaintiff to use illegal drugs, it did not compel him to introduce and possess illegal drugs at the workplace on government property. *See Maddox*, 62 F.3d at 848. Plaintiff does not deny that the events of October 1994 and January 1995 occurred, does not deny that the substances were controlled substances, and does not deny that Corps regulations authorize removal as a penalty for the offenses charged. In fact, plaintiff admits in his brief that "rehabilitation does not excuse any misconduct," citing *Widnall*. (Pltf's MPSJ at 21.) Clearly, plaintiff's termination was for his egregious conduct and the threat it posed to the safety of the lock and dam operation. Thus, plaintiff fails to satisfy all elements of a *prima facie* case under section 501, and summary judgment is proper.

### B. *Defendant Articulated Nondiscriminatory Reasons For Removal and Plaintiff Failed to Demonstrate Pretext*

 Even if plaintiff could establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the removal decision. *Widnall*, 79 F.3d at 1005 n. 3. In this case, the Decision to Remove itself recites the reasons, *i.e.*, loss of trust based upon introduction and possession of illegal drugs at the workplace on government property, and safety risks. (MSPB Rec., Vol. 2, Tab 4c.) Once the defendant sets forth such facially nondiscriminatory reasons for its decision, the burden then falls on plaintiff to show that there is a genuine dispute of material fact as to whether such proffered reasons are a pretext for discrimination, *Widnall*, 79 F.3d at 1005

n. 3; *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995). If plaintiff presents evidence that such proffered reasons were pretextual, summary judgment should be denied.

"A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer ... or that the employer's proffered explanation is unworthy of credence.'" *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Plaintiff does not challenge the credence of defendant's proffered reasons relating to the drug charges. He argues that "defendant discharged him based upon the stigma and stereotype of being a recovering drug addict." (Pltf's MPSJ at 22.) The only evidence offered by plaintiff in support of this argument is "defendant's own regulations," (*id.*), arguing that "[t]he fact that defendant moved to immediately discharge plaintiff based upon a simple possession issue, when a lesser penalty was authorized, strongly suggests pretext." (*Id.* at 24.)

Viewing the evidence in the light most favorable to plaintiff, the Court cannot find that he has raised a genuine issue of material fact that his termination was motivated by disability discrimination or that the reasons proffered by defendant were pretextual. Plaintiff on two occasions introduced and possessed illegal drugs at the workplace on government property. As discussed in Section IV.A., *supra*, defendant's regulations provide for a penalty for such offenses ranging from a 3–day suspension to removal. Merely because a lesser penalty is authorized does not make a stiffer penalty *per se* pretextual. Plaintiff simply disagrees with the penalty imposed, and "suggests" it is pretextual.

A Rehabilitation Act plaintiff may demonstrate pretext by showing that the asserted reasons had no basis in fact, the reasons did not in fact motivate the discharge, or, if they were factors in the decision, they were jointly insufficient to motivate the discharge. *Chappell v. GTE Products Corp.*, 803 F.2d 261, 266 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987).

*Maddox,* 62 F.3d at 848. Plaintiff has failed to make any of these showings. Mere conjecture that the proffered reasons are pretextual is an insufficient basis for denial of summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988). Summary judgment is appropriate on every element of plaintiff's claim under the Rehabilitation Act.

### C. *No Reprisal*

Related to plaintiff's claim of discrimination is his claim of reprisal (retaliation), in which he alleges that he was removed because of his prior protected activity. He successfully appealed his 1992 removal to the MSPB and was reinstated (*see* footnote 3, *supra*), and filed an EEO complaint in November 1995. Plaintiff asserts that these activities involved claims of disability discrimination. (Pltf's Resp.Br. at 17–18.)

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) protected Title VII activity, (2) adverse employment action subsequent to or contemporaneous with such activity, and (3) a causal connection between such activity and the employment action. *Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir.1993), *cert. denied,* 510 U.S. 1120, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994); *Love v. RE/MAX of America, Inc.,* 738 F.2d 383, 385 (10th Cir.1984). Once the plaintiff establishes a *prima facie* case, the burden of production shifts to defendant to articulate a legitimate, non-discriminatory reason for the employment action. *Kendall,* 998 F.2d at 850. Here, plaintiff can show protected activity (prior agency appeals and complaints), and can show an adverse employment action subsequent to such activity (removal). The next issue is whether plaintiff has raised a genuine issue of material fact as to a causal connection.

■ Plaintiff claims that the causal connection is evidenced by the timing of the action taken, and relies on *Love,* 738 F.2d at 386. More specifically, plaintiff suggests that defendant did not begin the "new" removal process (February 1996) until after plaintiff had filed his latest EEO complaint. (Pltf's Resp.Br. at 19 n. 3.) It is true that " '[t]he causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.' " *Love,* 738 F.2d at 386 (quoting *Burrus v. United Telephone Co.,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982)).

The Court recognizes that plaintiff has come forward with some evidence to support an inference of retaliatory motive. Larry Hogue, the supervisor who made the decision to remove plaintiff, became aware of plaintiff's November 1995 informal EEO Complaint the same day that Dennis L. Johnson issued the "new" removal letter on February 20, 1996. (MSPB Hrg. Tr. at 110–11; MSPB Rec., Vol. 2, Tab 4h.) At the time of removal, Mr. Hogue was also aware of plaintiff's 1994 reinstatement following his 1992 removal and successful MSPB appeal. (*Id.* at 111.) Although Mr. Hogue denies that he had any retaliatory motive or that the removal action had anything to do with prior protected activity (*id.*), the Court need not decide whether the evidence presented by plaintiff is sufficient to satisfy his burden of proof for a *prima facie* case. Even if this Court assumes that plaintiff has established a *prima facie* case because he showed that the individual who took adverse action against him knew of his protected activity (*see Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 635 (10th Cir.1988)), the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Kendall,* 998 F.2d at 850.

■ As discussed above, defendant has satisfied its burden. Defendant articulated legitimate reasons for the adverse actions against plaintiff. *See* Section V.B., *supra,* at 1312. The evidence produced by defendant dispels any inference of retaliation because it establishes the existence of legitimate reasons for removal. *See Burrus,* 683 F.2d at 343. Moreover, the Court finds those reasons to be true and not a pretext for discrimination. *See* Section V.B., *supra,* at 1312. Plaintiff has failed to meet his burden of proof on his reprisal claim, and summary judgment for defendant is appropriate.

**1314**

## VI.

Plaintiff filed an EEO Complaint on April 26, 1996 with the Department of the Army, alleging disability discrimination and reprisal based on three grounds: his detail to an unclassified position at the Corps' Fort Gibson facility in October 1995 after his first removal was cancelled, the delay in payment of back and current wages after that detail, and the refusal to allow him to use accrued leave. The Department of the Army's Final Decision dated November 17, 1997 found no discrimination.

In his Amended Complaint, plaintiff references the EEO Complaint, and seeks *de novo* review of the final agency decision on a complaint of discrimination. Such review as to plaintiff's termination is contained in Section V, *supra.* Defendant moved for summary judgment on plaintiff's claim of discrimination and reprisal as to these three other personnel issues (Fort Gibson detail, delayed wages, and leave usage). Plaintiff failed to respond to defendant's evidence or arguments. (*See* Pltf's Resp.Br.; Pltf's MPSJ.) For this reason alone, summary judgment is appropriate as to these three claims. *Celotex,* 477 U.S. at 317, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348.

However, a review of the EEO administrative record demonstrates that defendant is also entitled to summary judgment on the merits of these claims. To make out a *prima facie* case of disability discrimination when the personnel action is other than termination, a complainant must show:

(1) that he was a qualified disabled person or was perceived to be such a person;

(2) that he was subjected to an adverse employment decision; and

(3) that in regard to the complained of matters, he was treated differently from persons not disabled and/or was not accorded reasonable accommodation.

(EEO File, Vol. II, at 52.)

 Regarding his detail to Fort Gibson, this action fell within the definition of an adverse employment decision (EEO File, Vol. II, at 58), but plaintiff failed to show that he was a qualified disabled person or was per-

ceived to be such under the Rehabilitation Act of 1973. The evidence did not show that plaintiff's alleged disability of drug addiction or depression substantially limited one or more of his major life activities, and the evidence showed that he was using illegal drugs in October 1995 when he returned to federal service. (EEO File, Vol. II, at 53–56.) Plaintiff also failed to show that he was treated differently from persons not disabled. (EEO File, Vol. II, at 58–59.) Even if plaintiff could establish a *prima facie* case of disability discrimination, the defendant's actions were legitimate, non-discriminatory, and not a pretext. Plaintiff was reassigned to Fort Gibson because of a loss of trust based on his possession of illegal drugs at the workplace, not because he was a drug user. (EEO File, Vol. II, at 59.)

As to the delayed wages, plaintiff's claim was not supported by the evidence. Plaintiff's supervisor had no direct involvement in the payment of his wages, he did not know of the problem until contacted by an EEO counselor, and plaintiff had not complained about the delay. (EEO File, Vol. II, at 57; EEO File, Vol. I, Ex. F2, at 82–89.) The records show that management took the necessary steps to process plaintiff's pay once it was made aware of the delay, and he received all of his entitlements. (EEO File, Vol. II, at 57.)

Finally, regarding the leave usage, the evidence refuted plaintiff's claim. Plaintiff was allowed to use all of his accrued leave during the period in question. (EEO File, Vol. II, at 57–58; EEO File, Vol. I, at 87–88.) Plaintiff failed to show he was the victim of discrimination as to these three grounds alleged in his EEO Complaint, and defendant is entitled to summary judgment on these claims.

For all the foregoing reasons, Defendant's Motion for Summary Judgment (Docket # 23) should be and hereby is **GRANTED,** and Plaintiff's Motion for Partial Summary Judgment (Docket # 19) should be and hereby is **DENIED.** Counsel for defendant is directed to present an agreed form of Judgment no later than February 4, 1999.